Anthony DeGREGORY, as President of Metal Trades Council of New London County, AFL–CIO, for himself and those similarly situated, Plaintiff,

v.

Timothy GIESING, as the Chief of Police for the City of Groton, and Ella T. Grasso, Governor of the State of Connecticut, Defendants.

Civ. A. No. H–75–313.

United States District Court, D. Connecticut.

March 1, 1977.

As Amended March 16, 1977.

David F. Sweeney, Jr., and Amato A. DeLuca, Breslin, Sweeney & Gordon, Warwick, R. I., Joseph J. Parrilla, Longolucco, Parrilla & Lenihan, Westerly, R. I., Samuel J. Fiore, Pawcatuck, Conn., for plaintiff.

James F. Brennan, Jr., Corp. Counsel, Groton, Conn., for defendant Giesing.

Robert W. Murphy, Asst. Atty. Gen., Carl R. Ajello, Atty. Gen., of the State of Connecticut, Hartford, Conn., for defendant State of Conn.

Raymond W. Beckwith, Bridgeport, Conn., for General Dynamics.

Before SMITH, Circuit Judge, and CLARIE and BLUMENFELD, District Judges.

## MEMORANDUM OF DECISION

### J. JOSEPH SMITH, Circuit Judge:

Anthony DeGregory is President of the Metal Trades Council of New London County, AFL–CIO ("the Council"). Invoking our jurisdiction under 28 U.S.C. § 1343, he seeks a declaratory judgment that Conn. Gen.Stat.Ann. § 31–120 is unconstitutional and a permanent injunction enjoining Timothy Giesing, Chief of Police of the City of Groton, from arresting him or any other members of the Council for violating § 31–120.

The Governor of Connecticut was granted permission to intervene as a defendant. Following the convening of a three-judge court, pursuant to 28 U.S.C. §§ 2281 and 2284, a hearing was held. The parties having agreed on a stipulation of facts, this case is now ripe for decision. We hold that § 31–120 does not violate either the first or fourteenth amendment of the U.S. Constitution. We deny plaintiff's motion for an injunction and dismiss the action.

### I.

In August, 1975 Jinx Kessel and some other employees of the Electric Boat Division of General Dynamics Corporation ("Electric Boat") crossed a picket line that the Council had established at Electric Boat's plant in Groton, Connecticut. On September 21, 1975 six members of the Council walked in a single file on the public sidewalk in front of Kessel's residence, carrying signs which said "Jinx Kessel is employed as a scab at Electric Boat, New London, during a strike we are waging to protect our jobs."

The Groton police arrested three of the persons picketing Kessel's residence for violating § 31–120. The picketing was conducted in a non-violent manner, traffic was not obstructed, and ingress and egress to the property was not blocked. Chief Giesing later told other members of the Council that they would be arrested if they picketed a private residence.

While the strike ended in November 1975, Kessel and other employees who did not strike received the same wage increase as those Electric Boat workers who were on strike, retroactive for those who did not strike. DeGregory's affidavit says that he and other members of the Council "intend to engage in this picketing activity until the union [sic: management?] retracts its offer of the retroactive pay increase [to the non-strikers]." (Plaintiff's affidavit, ¶ 9.)

### II.

DeGregory brings this action on his own behalf and on behalf of all other members of the Council. On this record the three arrested members of the Council are not entitled to an injunction against their own pending state court prosecutions. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). DeGregory and any other members of the Council, whose standing is predicated solely on threatened prosecution can, however, obtain a declaratory judgment from this court as to the validity of § 31–120. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 930–931, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Allee v. Medrano,* 416 U.S. 802, 828, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974) (Burger, C. J., concurring); *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

Since we reject DeGregory's challenges to § 31–120, we do not decide the precise dimensions of the class he seeks to represent.

## III.

 We turn now to DeGregory's constitutional challenge to the statute.[1] Conn. Gen.Stat.Ann. § 31–120, passed in 1947, says:

No person shall engage in picketing before or about the home or residence of any individual unless such home or residence is adjacent to or in the same building or on the same premises in which such person was employed and which employment is involved in a labor dispute. Any person who violates the provisions of this section shall be fined not more than two hundred dollars or imprisoned not more than six months or both.

The only reported construction of this statute by a Connecticut court, *State v. Anonymous,* 6 Conn.Cir. 372, 274 A.2d 897 (Appellate Division 1971), holds that it prohibits labor, but not non-labor, picketing in residential areas. While we are not bound by this interpretation of § 31–120 by an intermediate appellate state court, we do consider it as an important datum for as-

certaining state law. *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940); *Fidelity Union Trust Co. v. Field,* 311 U.S. 169, 177–178, 61 S.Ct. 176, 85 L.Ed. 109 (1940). We agree that § 31–120 prohibits only labor picketing in residential areas.[2]

DeGregory concedes that he and other members of the Council wish to participate only in labor picketing in a residential area. He does not claim that either "labor dispute" or "home or residence" is unconstitutionally vague. Invoking *Police Department of the City of Chicago v. Mosley,* 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972) and *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), DeGregory argues that § 31–120 violates the first and fourteenth amendments · because it impermissibly restricts one type of picketing "because of its message, its ideas, its subject matter, or its content." *Mosley, supra,* 408 U.S. 95, 92 S.Ct. at 2290. While this argument is appealing, in the final analysis it is unpersuasive.[3]

---

1. A state law prohibiting the picketing of the homes of employees is not pre-empted by the National Labor Relations Act, 29 U.S.C. § 151 *et seq. Lodge 76, International Ass'n of Machinists v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 136 n.2, 96 S.Ct. 2548, 2551, 49 L.Ed.2d 396 (1976); *UAW v. Wisconsin Employment Relations Board,* 351 U.S. 266, 274, 76 S.Ct. 794, 100 L.Ed. 1162 (1956); *Allen Bradley Local No. 1111 v. Wisconsin Employment. Relations Board,* 315 U.S. 740, 748, 62 S.Ct. 820, 86 L.Ed. 1154 (1942).

2. Judge Jacobs said that § 31–120 applies only to picketing of employers' homes. Judge Casale said it applies only to a labor dispute. Judge Kosicki concurred without opinion. We think Judge Jacobs' interpretation is too narrow. He points out that § 31–120 grew out of a refusal by this court to enjoin interference with picketing in a residential area during a labor strike. *United Electrical, Radio & Machine Workers v. Baldwin,* 67 F.Supp. 235 (D.Conn. 1946). In *Baldwin,* pickets were arrested in front of the homes of both a non-striking worker and a plant official (*id.,* at 238).

All members of this panel have practiced at the Connecticut bar. *Bernhardt v. Polygraphic Co. of America, Inc.,* 350 U.S. 198, 204, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

3. There may be some question whether sidewalks in a residential area are a "First Amendment Forum," *Lehman v. City of Shaker*

*Heights,* 418 U.S. 298, 304, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974). "While petitioner clearly has a right to express his views to those who wish to listen, he has no right to force his message upon an audience incapable of declining to receive it." *Id.,* at 307, 94 S.Ct. at 2719 (Douglas, J., concurring). Here we have picketing on a sidewalk in a residential area. There is no showing that the state has made these sidewalks "a forum for communication" or that these residential area sidewalks "time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Id.,* at 314, 313, 94 S.Ct. at 2722 (Brennan, J., dissenting).

Unlike people in a public park or city streets, *Hague v. C.I.O.,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), or in a large shopping center, comparable to the business area of a municipality; *Amalgamated Food Employees Local 590 v. Logan Valley Plaza, Inc.,* 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), persons in their homes cannot easily avoid pickets ·on sidewalks in residential areas. We must take into account the homeowners' "very basic right to be free from sights, sounds and tangible matter [they] do not want." *Rowan v. Post Office Department,* 397 U.S. 728, 736, 90 S.Ct. 1484, 1490, 25 L.Ed.2d 756 (1970); *Hynes v. Mayor and Council of the Borough of Oradell,* 425 U.S. 610, 619, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976).

Even if we assume, *arguendo*, that sidewalks in residential areas are a public forum for the communication of ideas,[4] "the speech of labor disputants, of course, is subject to a number of restrictions." *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 763 n. 17, 96 S.Ct. 1817, 1826, 48 L.Ed.2d 346 (1976). Picketing by members of a labor union has been consistently viewed by the courts as being more than simply the expression of ideas.[5]

> [P]icketing, even though "peaceful," involved more than just communication of ideas and could not be immune from all state regulation. . . . [A] State, in enforcing some public policy, whether of its criminal or its civil law . . . could constitutionally enjoin peaceful picketing aimed at preventing effectuation of that policy.

*Teamsters Local 695 v. Vogt, Inc.*, 354 U.S. 284, 289, 293, 77 S.Ct. 1166, 1169, 1171, 1 L.Ed.2d 1347 (1957). *American Radio Ass'n v. Mobile Steamship Ass'n*, 419 U.S. 215, 229, 95 S.Ct. 409, 42 L.Ed.2d 399 (1974).

Section 31–120 does not prohibit labor picketing in a residential area when the locus of the labor dispute is also in the residential area. *Cf. Thornhill v. Alabama*, 310 U.S. 88, 105, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). Connecticut can "set the limits of permissible contest open to industrial combatants." *Id.*, at 104, 60 S.Ct. at 745. The Connecticut legislature could notice instances of violence involved in some labor picketing and conceivably prohibit all labor picketing—even if peaceful—in residential areas if the prohibition were necessary to serve an important interest of society. *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 501, 69 S.Ct. 684, 93 L.Ed. 834 (1949). Privacy and quiet in a residential area are an important interest. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 9, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). The Connecticut legislature could constitutionally pass a narrowly drawn statute restricting labor picketing in residential areas in order to prevent an intrusion "on the privacy of the home." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209, 95 S.Ct. 2268, 2272, 45 L.Ed.2d 125 (1975). *Vogt, supra*, 354 U.S. 295, 77 S.Ct. 1166; *Thornhill, supra*, 310 U.S. 105, 60 S.Ct. 736.[6] Connecticut "may 'direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses, and it may do so none the less that the forbidden act does not differ in kind from those that are allowed.'" *Hughes v. Superior Court of California for Contra Costa County*, 339 U.S. 460, 468, 70 S.Ct. 718, 723, 94 L.Ed. 985 (1950). It was open to the legislature to regulate labor picketing in residential areas and limit it to work sites, if the problem before it was limited to labor picketing. Other considerations might apply to other types of picketing approaching more closely to pure speech.

It might appear that the case at bar is governed by *Police Department of the City of Chicago v. Mosley, supra*, 408 U.S. at 92, 92 S.Ct. 2286, 33 L.Ed.2d 212. However, a careful reading of the *Mosley* opinion reveals that the present case is significantly different.

In *Mosley*, the Court invalidated on equal protection grounds a city ordinance which prohibited all picketing within 150 feet of a school, except for peaceful labor picketing. The Court found the central problem with the ordinance to be its description of permissible picketing in terms of the subject matter of that picketing. While there is some suggestion in the opinion that such subject matter distinctions are never per-

---

4. The difficulty of deciding whether there is a "public forum" is illustrated by comparing the concurring opinions of Justice Brennan and Justice Stewart in *City of Madison, Joint School District v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 177, 180, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976).

5. The Supreme Court has also said that the first amendment does not bar an examination of the content of an employer's speech to his employees in order to see if it is "coercive." *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 616–620, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969).

6. Whether the legislature's course is a wise one is not for our determination.

mitted, other portions of the opinion indicate that such classifications are permissible if they are precisely tailored to serve a substantial governmental interest. This latter reading comports with traditional equal protection analysis, cf. *William v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), and is supported by the gloss placed on *Mosley* by five members of the Court in *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 63–71 and 82–83 n.6, 96 S.Ct. 2440, 2448–2451, 2458–59, 49 L.Ed.2d 310 (opinion of four justices) (Powell, J., concurring).

■ The statute involved in the present case is the converse of the ordinance invalidated in *Mosley*. Connecticut permits all picketing in a residential area, except for labor picketing which is not being conducted at the situs of a labor dispute. Thus, Connecticut's statute establishes two classifications: first, it distinguishes between labor and non-labor picketing; second, it distinguishes between labor picketing at the situs of a labor dispute and labor picketing at all other places. In view of the principles articulated in *Mosley*, these classifications can be justified only if they precisely advance a substantial governmental interest.

As with Chicago's ordinance in *Mosley*, Connecticut's statute distinguishes between labor and non-labor picketing. However, unlike the ordinance in *Mosley*, Connecticut has placed the restriction on labor picketing, while permitting non-labor picketing. In *Mosley*, Chicago argued that its prohibition on non-labor picketing was necessary to prevent disruptions near its schools. While recognizing that Chicago had a substantial interest in preserving a peaceful academic environment, the Court found the city's classification which permitted only labor picketing to be impermissibly under-inclusive. 408 U.S. at 101–102, 92 S.Ct. 2286.

In the present case, Connecticut asserts the similarly substantial interest in preserving the quiet and tranquility of its residential communities. However, Connecticut has avoided the defect of Chicago's ordinance because it has drawn a line which advances this interest in a sufficiently precise manner. Labor picketing has traditionally been a matter for some state regulation, *see, e. g., Teamsters Local 695 v. Vogt, Inc., supra*, 354 U.S. 284, 77 S.Ct. 1166, and because of its unique features it has been subject to greater restrictions than non-labor picketing. Professor Emerson has articulated the basis for this distinction in the following way:

> The first thing to note is that there is a fundamental difference between most labor picketing and most non-labor picketing. Labor picketing normally has a special kind of economic impact, derived from its institutional setting. An employer who is picketed is usually sealed off from many economic contacts by the tradition that union labor will not cross the picket line. This form of pressure is applied by closely knit, powerful organizations, with membership in the thousands or hundreds of thousands and a nationwide network of affiliates. It is supported by a system of power based upon common economic interests, loyalties, social pressures, economic sanctions, and bureaucratic force. A labor picket line is thus not so much a rational appeal to persuasion as a signal for the application of immediate and enormous economic leverage, based upon an already prepared position. As such it must, under ordinary circumstances, be classified as action, rather than expression.

> Most non-labor picketing is of a substantially different character. It is usually undertaken by relatively small groups, with relatively limited resources, as compared with labor organizations. Such groups are not highly organized around a major economic interest, but ordinarily are more loosely put together, with a narrower claim on the loyalties of their members. They do not have at their command the apparatus for applying economic pressures that the labor organizations do. Nor do they occupy such a strategic position of power vis-a-vis the object of their pressure. Their appeal is, in fact, usually directed much more to the

general public than to their own members. Picketing under such circumstances is a call to reason, not the application of economic coercion, and as such must be classified as expression.
[Citations omitted].

T. Emerson, *The System of Freedom of Expression* 445 (1970). *See also, Medrano v. Allee*, 347 F.Supp. 605, 622–629 (S.D.Tex. 1972), *aff'd in part, vacated in part and remanded*, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974).

Thus, unlike Chicago, Connecticut has limited its restriction to what has been traditionally viewed to be the more intrusive type of picketing. *Cf. Hughes v. Superior Court, supra*, 339 U.S. 460, 468, 70 S.Ct. 718, 94 L.Ed. 985. For this reason, the Connecticut statute is not directed against labor picketing because of the content of its message, but rather because of its effects. *Young v. American Mini Theatres, Inc., supra*, at 82, 96 S.Ct. at 2459, n.6 (Powell, J., concurring). While not perfect, the line drawn by Connecticut advances a substantial state interest in a sufficiently precise manner.

The Connecticut statute also distinguishes between labor picketing at the situs of a labor dispute and labor picketing at other places; only the latter is prohibited. Unlike the distinction between labor and non-labor picketing, this classification is not based on subject matter, but rather on location. Hence, it is akin to traditional "time, place and manner," regulations. *Police Department of the City of Chicago v. Mosley, supra*, 408 U.S. at 98–99, 92 S.Ct. 2286. In this way, the classification advances the state's substantial interest in limiting the scope of a labor dispute to the situs of that dispute. *Cf. Carpenters & Joiners Union of*

America, Local No. 213 v. Ritter's Cafe, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143 (1942); *Thornhill v. Alabama, supra*, 310 U.S. at 105, 60 S.Ct. 736; *Gomez v. United Office and Professional Workers of America, CIO, Local 16*, 73 F.Supp. 679, 683 (D.D.C.1947). The statute specifically leaves open to labor picketing the most appropriate places for communicating its message. For these reasons this aspect of the Connecticut statute also satisfies the equal protection principles of *Mosley*.[7]

We reject DeGregory's claim that § 31–120 violates either the first or the fourteenth amendment and enter judgment for the defendants.

The foregoing constitute our findings of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure.

It is SO ORDERED.

---

7. Given our interpretation of § 31–120, we do not reach the question of whether a statute prohibiting only some types of non-labor picketing would violate the first and fourteenth amendments. *Compare Hynes v. Mayor and Council of Borough of Oradell*, 425 U.S. 610, 619, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976); *Hudgens v. NLRB*, 424 U.S. 507, 520, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976); *Police Department of the City of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); *Brown v.*

*Louisiana*, 383 U.S. 131, 143, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966) *with Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 63–71, 96 S.Ct. 2440, 2448–2452, 49 L.Ed.2d 310 (1976). We also do not reach the question of whether a statute banning all picketing in residential areas would be constitutional. *Compare Adderley v. Florida*, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1969) *with Organization for a Better Austin v. Keefe*, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971).