## UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA, Appellant,

v.

## STATE EMPLOYMENT RELATIONS BOARD, Appellee; Ohio Turnpike Commission, Intervenor.

[Cite as *United Electrical, Radio & Machine Workers of Am. v. State Emp. Relations Bd.* (1998), 126 Ohio App.3d 345.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 72168.

Decided May 18, 1998.

346

*Goldstein & Roloff, Joyce Goldstein* and *Bryan O'Connor,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Daniel P. Jones,* Assistant Attorney General, Labor Relations Section, for appellee.

*Squire, Sanders & Dempsey, David J. Millstone* and *Michael W. Kelly,* for intervenor.

KARPINSKI, Judge.

Plaintiff-appellant, United Electrical, Radio and Machine Workers of America, appeals from the judgment of the trial court which affirmed the decision of the State Employment Relations Board ("SERB"), finding that the plaintiff violated R.C. 4117.11(B)(7) and (8). More importantly for purposes of this appeal, the

trial court found these statutes to be constitutional. Plaintiff argues that these statutes are an unconstitutional, content-based violation of the First Amendment. Defendant-appellee, SERB, and intervenor, Ohio Turnpike Commission ("commission"), disagree, arguing that the statutes are valid, content-neutral time, place, and manner restrictions that do not violate the First Amendment.

This dispute arose during plaintiff's attempts to organize the part-time workers of the commission.[1] On September 1, 1992, the union filed a representation petition with SERB in which the union sought to represent the part-time toll collectors. After a hearing on this petition, a SERB hearing officer issued a Recommended Determination in the union's favor on May 17, 1993. The commission appealed to SERB, arguing that part-time employees were not governed by the Public Employees Collective Bargaining Act. SERB found in favor of the union and adopted the decision of the hearing officer. Subsequently, the plaintiff won the election that was held on March 1 and 2, 1994.

While this dispute was proceeding through SERB, plaintiff concluded that the commission was engaged in delaying tactics after the initial petition was filed. On the morning of May 10, 1993, the union decided to picket the residence of Alan V. Johnson, the executive director of the commission. The picketing consisted of eleven persons carrying signs in front of Johnson's house from 3:30 p.m. to 4:30 p.m. Nobody was home during the picketing. The signs read, "Democracy is the American way … LET U.S. VOTE," "PROMOTE from within … LET part-timers go FULL TIME," "What are you afraid of? LET U.S. VOTE," "Free the part timers! Let us go full time." No complaints occurred, no police were summoned, and traffic was not obstructed.

After this picketing, the commission filed an unfair labor practice charge with SERB. The commission alleged that plaintiff violated R.C. 4117.11(B)(7), which prohibits picketing at the private residence of an employer, and R.C. 4117.11(B)(8), which prohibits picketing without giving the public employer and SERB ten days' written notice.

After conducting hearings on this dispute, SERB found that the statutes were in fact violated. In response to plaintiff's argument that the statutes were unconstitutional, SERB held that it did not have the authority to make such a determination. Plaintiff appealed to the trial court, which affirmed the decision of SERB and held that the statutes were constitutional.

In a timely appeal to this court, plaintiff raises the following sole assignment of error:

---

1. Plaintiff already represents the full-time workers of the commission.

"The court below erred in finding that Ohio Revised Code Sections 4117.11(B)(7) and (8) are constitutionally sound under the First Amendment of the United States Constitution and Article I, Section 11 of the Ohio Constitution."

█ In the first part of this assignment, plaintiff asserts that R.C. 4117.11(B)(7), which makes it an unfair labor practice to picket the residence of a public official involved in a labor relations dispute, is unconstitutional. Specifically, plaintiff contends that the statute is a content-based regulation which does not serve any compelling state interest. SERB and the Ohio Turnpike Commission respond that the statute is a permissible time, place, and manner regulation of speech.

## PICKETING

At the outset, it is important to note that the courts have acknowledged that picketing has an important history in this county. "Because of the importance of 'uninhibited, robust, and wide-open' debate on public issues, *New York Times Co. v. Sullivan,* 376 U.S. 254, 270 [84 S.Ct. 710 720–721, 11 L.Ed.2d 686, 700–701] (1964), we have traditionally subjected restrictions on public issue picketing to careful scrutiny." *Frisby v. Schultz* (1988), 487 U.S. 474, 479, 108 S.Ct. 2495, 2499, 101 L.Ed.2d 420, 428. In a recent application of this principle, the Ohio Supreme Court held that a trial court abuses its discretion when it completely bans simultaneous residential picketing by groups with contrary views. *Seven Hills v. Aryan Nations* (1996), 76 Ohio St.3d 304, 667 N.E.2d 942.

█ In reviewing the constitutionality of any statute, a court looks first at the forum where the speech takes place. *Perry Edn. Assn. v. Perry Local Educators' Assn.* (1983), 460 U.S. 37, 44, 103 S.Ct. 948, 954, 74 L.Ed.2d 794, 804. It is indisputable that the public streets are the "quintessential" public forum. In *Seven Hills,* the Supreme Court of Ohio stated as follows:

"[T]he degree to which a state may regulate speech depends upon the place of that speech. *Frisby v. Schultz* (1988), 487 U.S. 474, 479, 108 S.Ct. 2495, 2500, 101 L.Ed.2d 420, 428, citing *Perry Edn. Assn. v. Perry Local Educators' Assn.* (1983), 460 U.S. 37, 44, 103 S.Ct. 948, 954, 74 L.Ed.2d 794, 804. In this case, the picketing takes place on the street in front of Demjanjuk's home, a traditional or 'quintessential' public forum regardless of its physical narrowness and residential character. See *Frisby,* 487 U.S. at 481, 108 S.Ct. at 2500, 101 L.Ed.2d at 429." *Seven Hills,* 76 Ohio St.3d at 306, 667 N.E.2d at 946.

The next, and most significant, question is whether the statute is content-based or content-neutral. One commentator has described the import of this issue as follows:

■

■ "The distinction between content-based and content-neutral regulation of speech is one of the central tenets of contemporary First Amendment jurisprudence. The characterization of law as content-based or content neutral is enormously important, for it often effectively determines the outcome of First Amendment litigation. Content-based laws generally trigger heightened scrutiny in one of its manifestations, and when heightened scrutiny is applied, the odds are quite high that the law will be struck down. Content-neutral laws, on the other hand, qualify for significantly less rigorous levels of review, often resulting in judicial decisions upholding the regulations at issue." (Footnotes omitted.) Smolla & Nimmer on Freedom of Speech (Sept. 1997), Section 3:1, at 1–2. The "principal inquiry in determining content neutrality is whether the government has adopted a regulation of speech 'without reference to the content of the regulated speech.'" *Madsen v. Women's Health Ctr., Inc.* (1994), 512 U.S. 753, 763, 114 S.Ct. 2516, 2523, 129 L.Ed.2d 593, 606, quoting *Ward v. Rock Against Racism* (1989), 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661, 675. In this inquiry, this court must "look to the government's purpose as the threshold consideration." *Id.,* 512 U.S. at 763, 114 S.Ct. at 2523, 129 L.Ed.2d at 606; *Seven Hills,* 76 Ohio St.3d at 306, 667 N.E.2d at 946.

R.C. 4117.11(B)(7) states as follows:

"(B) It is an unfair labor practice for an employee organization, its agents, or representatives, or public employees to:

"* * *

"(7) Induce or encourage any individual *in connection with a labor relations dispute* to picket the residence or any place of private employment of any public official or representative of the public employer." (Emphasis added.)

In determining whether this statute is content-based or content-neutral, we are aided by two decisions of the United States Supreme Court invalidating two different statutes that limited picketing and drew distinctions between labor and non-labor picketing. *Police Dept. of Chicago v. Mosley* (1972), 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212, and *Carey v. Brown* (1980), 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263.

In *Mosley,* the court reviewed an ordinance that prohibited picketing on a public way within one hundred fifty feet of a school during school hours. The statute specifically exempted peaceful labor picketing. The city argued that it was a permissible time, place, and manner restriction, but the Supreme Court disagreed. Applying a strict-scrutiny standard, the court found that the regulation was content-based because it distinguished between labor and non-labor picketing and, therefore, struck down the ordinance. The court explained as follows:

"The central problem with Chicago's ordinance is that it describes permissible picketing in terms of its subject matter. Peaceful picketing in the subject of a school's labor management dispute is permitted, but all other peaceful picketing is prohibited. The operative distinction is the message on a picket sign. But, above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter or its content.

"* * *

"Once a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say. Selective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone." *Mosley*, 408 U.S. at 95–96, 92 S.Ct. at 2290, 33 L.Ed.2d at 216–217.

Similarly, in *Carey* the Supreme Court reviewed a statute that prohibited all picketing of residences or dwellings except for the peaceful picketing of a place of employment involved in a labor dispute. The court determined that the law distinguished between labor and non-labor picketing and, therefore, was content-based. Invalidating the statute prohibiting residential picketing, the court stated as follows:

"Nor can it be seriously disputed that in exempting from its general prohibition only the 'peaceful picketing of a place of employment involved in a labor dispute,' the Illinois statute discriminates between lawful and unlawful conduct based upon the content of the demonstrator's communication. On its face, the Act accords preferential treatment to the expression of views on one particular subject; information about labor disputes may be freely disseminated, but discussion of all other issues is restricted. The permissibility of residential picketing under the Illinois statute is thus dependent solely on the nature of the message being conveyed." *Carey*, 447 U.S. at 460–461, 100 S.Ct. at 2290, 65 L.Ed.2d at 269–270. See, also, *Davis v. Newburgh Hts.* (N.D.Ohio 1986), 642 F.Supp. 413 (municipal ordinance which regulated only labor picketing was content-based and unconstitutional); *Kirkeby v. Furness* (C.A.8, 1996), 92 F.3d 655 (statute defining residential picketing "for the purpose of persuading the public or an occupant of such premises or to protest some action, attitude or belief" was content-based and unconstitutional); *Pineros Y Campesinos Unidos v. Goldschmidt* (D.Ore.1990), 790 F.Supp. 216 (statute prohibiting farm workers from picketing a farm during harvest time was content-based and unconstitutional).

In the case at bar, the state of Ohio's purpose is to regulate a very specific type of speech: residential labor picketing. The statute does not neutrally regulate all residential picketing; rather, the statute's proscription against residential picket-

ing applies only to "a labor relations dispute." Accordingly, it is clear that R.C. 4117.11(B)(7) regulates picketing solely on the basis of its content.

SERB argues that statutes of other states prohibiting residential labor picketing have been upheld by courts. In support of this proposition, SERB cites only *DeGregory v. Giesing* (D.C.Conn. 1977), 427 F.Supp. 910. In *DeGregory*, the district court upheld a Connecticut statute which prohibited labor picketing at a residence but permitted other forms of residential picketing. The United States Supreme Court expressly noted, on the other hand, that this Connecticut statute was similar to the statute that the court had found unconstitutional in another case. *Carey*, 447 U.S. at 456, 100 S.Ct. at 2288, 65 L.Ed.2d at 267, fn. 1. Moreover, the Connecticut Supreme Court subsequently relied on *Carey* and found the statute to be unconstitutional. *French v. Amalgamated Local 376* (1987), 203 Conn. 624, 526 A.2d 861. *DeGregory*, therefore, is not helpful.

Nor is *Frisby*,[2] which both SERB and the commission cite. In that case, the United States Supreme Court upheld a local ordinance prohibiting all residential picketing. The ordinance did not single out labor picketing, as do the statutes in the case at bar and in *Carey*. Affirming the trial court's finding that the statute was content-neutral, the Supreme Court then proceeded to employ a lesser standard of scrutiny.

█ In the case at bar, however, the statute imposes a content-based restriction in a public forum; hence, we must apply a heightened level of scrutiny to our review. Content-based restrictions in a public forum are subjected to the "most exacting scrutiny." *Boos v. Barry* (1988), 485 U.S. 312, 321, 108 S.Ct. 1157, 1164, 99 L.Ed.2d 333, 345; *Seven Hills*, 76 Ohio St.3d at 307, 667 N.E.2d at 946–947. Under this strict-scrutiny test, the state must show that the "regulation is necessary to serve a compelling state interest and * * * is narrowly drawn to achieve that end." *Perry Edn. Assn.*, 460 U.S. at 45, 103 S.Ct. at 955, 74 L.Ed.2d at 804; *Seven Hills*, 76 Ohio St.3d at 307, 667 N.E.2d at 946–947. The United States Supreme Court has acknowledged that a law rarely survives such scrutiny. *Burson v. Freeman* (1992), 504 U.S. 191, 112 S.Ct. 1846, 119 L.Ed.2d 5.

SERB has asserted three interests served by the legislation: (1) protecting residential privacy, (2) encouraging private citizens to serve as officials of a public employer, and (3) maintaining labor peace. SERB must demonstrate, as opposed to merely assert, however, the compelling nature of these interests.

---

**2.** Many of the cases relied upon by SERB and the commission were decided prior to modern Supreme Court jurisprudence which applies the content-based/content-neutral analysis. See *Carpenters & Joiners Union of Am. Local 213 v. Ritter's Cafe* (1942), 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143 and *Pipe Machinery Co. v. De More* (Ohio App.1947), 36 O.O. 342, 76 N.E.2d 725 (Cuyahoga County).

SERB has failed to meet this burden. The Ohio Supreme Court has previously recognized that the state's interest in protecting the tranquility and privacy of a residential neighborhood is "significant," but not compelling. *Seven Hills,* 76 Ohio St.3d at 309, 667 N.E.2d at 948–949. The Eighth Circuit Court of Appeals applied the same distinction when it ruled on a city ordinance which prohibited labor from picketing individual residences and adopted restricted picketing zones:

"As we have already noted, because the definition of picketing is content-based, any restriction on expression that incorporates it must be justified by a compelling government interest. *Perry,* 460 U.S. at 45, 103 S.Ct. at 954–55 [74 L.Ed.2d at 804–805]. Although the interest asserted by Fargo (protecting residential privacy and tranquility) is a 'substantial' one, *Frisby,* 487 U.S. at 488, 108 S.Ct. at 2504 [101 L.Ed.2d at 434], the Supreme Court has never held that it is a compelling interest, *see Carey v. Brown,* 447 U.S. 455, 465, 100 S.Ct. 2286, 2292–93, 65 L.Ed.2d 263 (1980), and we do not think that it is. Because the entire ordinance is bottomed on this definition, it is unconstitutional." *Kirkeby v. Furness,* 92 F.3d at 659.

We agree with this analysis.

The same distinction applies to the other interests SERB claims here. There is no evidence that encouraging citizens to serve as officials of public employers is a "compelling" state interest, although it may be a desirable goal. Similarly, the state's broad declarations about the government's interest in preserving labor peace are too vague to qualify as compelling interests. *Mosley.* The law does not require peace at any price. Nor is peace to be defined as the absence of dispute. On the contrary, in *Seven Hills,* the court specifically noted that an essential function of free speech is to invite dispute. SERB has failed to show, therefore, how the regulation serves a compelling state interest.

This statute also fails to meet the second part of the strict-scrutiny test, which requires that it be narrowly tailored. In other words, SERB has not shown that less intrusive means are not available to serve the stated interests. *Ward.* We already have residential ordinances and a criminal code to preserve law and order and residential privacy. Moreover, these regulations, which focus on a specific abuse, deal evenhandedly with picketing in general, regardless of subject matter. *Carey,* 447 U.S. at 462, 100 S.Ct. at 2291, 65 L.Ed.2d at 270–271. SERB must show, therefore, what is so different about labor picketing that more intrusive laws are needed. SERB has not met this burden. It has failed to explain why any excesses of labor picketing cannot be controlled by the same statutes that operate for, say, political picketing, which can be just as passionate. The statute must be strictly tailored to what is demonstrably necessary to protect residential privacy. We conclude that it is not sufficiently tailored because this end is adequately served by statutes and local ordinances designed to protect the public

peace.   See R.C. Chapter 2917.   The state's interest in labor peace is similarly covered by other sections of Ohio's collective bargaining law, which is to be liberally construed to promote orderly and constructive relationships between public employees and their employers.   R.C. 4117.22.   Accordingly, because this statute is not content-neutral, does not serve a compelling state interest, and is not narrowly tailored, R.C. 4117.11(B)(7) is unconstitutional.

## ADVANCE NOTICE

■   In the second part of the assignment, the union argues that the advance-notice provision of R.C. 4117.11(B)(8) is an unconstitutional prior restraint.   This section of the statute states as follows:

"(B) It is an unfair labor practice for an employee organization, its agents, or representatives, or public employees to:

"* * *

"(8) Engage in any picketing, striking, or other concerted refusal to work without giving written notice to the public employer and to the state employment relations board not less than ten days prior to the action.   The notice shall state the date and time that the action will commence and, once the notice is given, the parties may extend it by the written agreement of both."

■   Forbidding certain communication in advance of the time that the communications are to occur is a prior restraint.   *Seven Hills, supra.*   A statute requiring advance notice before the exercise of speech can constitute an unconstitutional prior restraint.   *Thomas v. Collins* (1945), 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430;   *Rosen v. Port of Portland* (C.A.9, 1981), 641 F.2d 1243;   *Robinson v. Coopwood* (D.C.Miss.1968), 292 F.Supp. 926;   *Anderson v. Cent. Point School Dist.* (D.C.Ore.1982), 554 F.Supp. 600.   In *Thomas,* the United States Supreme Court invalidated a statute which required advance registration by labor organizers before they solicited membership in a union.   The court wrote at 323 U.S. at 540, 65 S.Ct. at 327, 89 L.Ed. at 445–446, as follows:

"If the exercise of the rights of free speech and free assembly cannot be made a crime, we do not think this can be accomplished by the device of requiring previous registration as a condition for exercising them and making such a condition the foundation for restraining in advance their exercise and for imposing a penalty for violating such a restraining order.   So long as no more is involved than exercise of the rights of free speech and free assembly, it is immune to such restriction.   If one who solicits support for the cause of labor may be required to register as a condition to the exercise of his right to make a public speech, so may he who seeks to rally support for any social, business, religious or political cause.   We think a requirement that one must register

before he undertakes to make a public speech to enlist support for a lawful movement is quite incompatible with the requirements of the First Amendment."

In *Rosen*, the court held that a one-day advance-notice requirement for demonstrating or leafleting in an airport terminal constituted an invalid prior restraint. Finally, in *Robinson*, the court found unconstitutional a municipal ordinance which required that a one-hour notice be given to the police before any march or protest. See, also, *Grossman v. Portland* (C.A.9, 1994), 33 F.3d 1200 (unconstitutional seven-day notice for permission to demonstrate in a public park); *NAACP, W. Region v. Richmond* (C.A.9, 1984), 743 F.2d 1346 (unconstitutional twenty-day notice for parades); *Douglas v. Brownell* (C.A.8, 1996), 88 F.3d 1511 (unconstitutional five-day notice requirement for parades). Following the above line of cases, we conclude that the advance-notice provision of R.C. 4117.11(B)(8) is a prior restraint.

SERB and the commission argue that a prior restraint exists only where a public official has the additional authority to grant or deny the permission to exercise First Amendment rights. This argument fails. In *Thomas, Rosen*, and *Robinson*, the statutes found to be prior restraints required only prior notice, not approval by a public official. Moreover, in *Douglas, Grossman*, and *NAACP, Western Region*, the courts still took issue with the advance-notice provisions separately from the issue of a public official's discretion.

Additionally, the commission cites a provision in the National Labor Relations Act, Section 158(g), Title 29, U.S. Code, which requires a union to give a ten–day notice to a health care institution before the union strikes or pickets. This statute applies solely to health care institutions. *Montefiore Hosp. & Med. Ctr. v. Natl. Labor Relations Bd.* (C.A.2, 1980), 621 F.2d 510, 514. The unique circumstance of the health care industry makes this limited exception inapplicable to the case at bar.

■■ Having determined that this statute is a prior restraint, we must again employ a heightened level of scrutiny in our review. Generally, "a prior restraint on the exercise of First Amendment rights bears 'a heavy presumption against its constitutional validity.'" *Douglas v. Brownell* (C.A.8, 1996), 88 F.3d 1511, 1521, quoting *Vance v. Universal Amusement Co.* (1980), 445 U.S. 308, 317, 100 S.Ct. 1156, 1162, 63 L.Ed.2d 413, 420. "The presumption is heavier against 'prior restraints,' and the protection therefore greater, because 'prior restraints on speech and publications are the most serious and the least tolerable infringement on First Amendment rights.'" *Rosen*, 641 F.2d at 1247, quoting *Nebraska Press Assn. v. Stuart* (1976), 427 U.S. 539, 559, 96 S.Ct. 2791, 2802, 49 L.Ed.2d 683, 697.

■ There is an additional reason for employing the strict-scrutiny standard of review. Like the picketing prohibition, the advance-notice requirement is not

content-neutral. Both provisions apply only to labor picketing. See discussion, *infra*. Thus there are two independent principles requiring strict scrutiny. In order for a prior restraint to be upheld against the background of this heavy presumption, the state must show that the "regulation is necessary to serve a compelling state interest and * * * is narrowly drawn to achieve that end." *Seven Hills*, 76 Ohio St.3d at 307, 667 N.E.2d at 947.

SERB argues that the purpose of R.C. 4117.11(B)(8) is to allow a "cooling off" period. This is not a compelling state interest. The facts of the case at bar reveal the deficiency of this explanation. The picketing was not a call for any type of work stoppage or action: it was merely informational. Under these circumstances, the statute serves only to chill the expression of political speech. On this point, we again emphasize the Ohio Supreme Court's recent endorsement of dispute as an essential function of free speech. Free speech is not served by imposing a delay of ten days. Rather, such a restriction disperses the drama of the moment and interrupts the natural momentum of events.

■■■ Additionally, the ten-day notice requirement fails the second half of the test: it is not narrowly tailored. The restriction on First Amendment activity may not burden substantially more speech than is necessary to further the government's legitimate interest. *Grossman*, 33 F.3d at 1205. In *Grossman*, the court held that the city's interest in protecting the convenience and safety of park users was not justified by the broad sweep of a seven-day advance-notice provision which "drastically burden[s] free speech." *Id.* at 1206. Other courts have noted that even shorter notice requirements were not narrowly tailored. In *Douglas*, the court held that the five-day notice requirement restricted a substantial amount of speech which did not interfere with the city's stated interests, and, therefore, the ordinance was not narrowly tailored. In *Rosen*, the court held that the port's interest in knowing in advance what type of speech may occur at the airport was not justified by even a one-day advance-notice provision.

The underlying principle throughout these cases is that "spontaneous expression, which is often the most effective kind of expression," is valued. *Grossman*, 33 F.3d at 1206. Advance-notice requirements prevent immediate response to immediate issues and thus have a chilling effect on the exercise of First Amendment rights. *Id.; Rosen*, 641 F.2d at 1249. *Douglas*, 88 F.3d at 1523, quoted Justice Harlan's concurrence in *Shuttlesworth v. Birmingham* (1969), 394 U.S. 147, 163, 89 S.Ct. 935, 945, 22 L.Ed.2d 162, 174: "Timing is of the essence in politics * * *. [W]hen an event occurs, it is often necessary to have one's voice heard promptly, if it is to be considered at all."

In light of the importance of spontaneous expression and the considerable judicial precedent striking down advance-notice provisions, even as short as one

day, the statute in the case at bar cannot survive judicial scrutiny. Accordingly, we hold that both subsections (7) and (8) of R.C. 4117.11(B) are unconstitutional.

*Judgment reversed.*

JAMES D. SWEENEY, C.J., concurs.

HOLMES, J., concurs in part and dissents in part.

ROBERT E. HOLMES, J., retired, of the Supreme Court of Ohio, sitting by assignment.

HOLMES, Judge, concurring in part and dissenting in part.

Due to the most recent pronouncements of the United States Supreme Court and the Supreme Court of Ohio, construing laws regulating or prohibiting picketing in residential areas, with specific inquiry as to whether such laws are content-based or content-neutral, I must concur with the majority that R.C. 4117.11(B)(7) is unconstitutional. See *Carey v. Brown* (1980), 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263, *Madsen v. Women's Health Ctr., Inc.* (1994), 512 U.S. 753, 114 S.Ct. 2516, 129 L.Ed.2d 593; *Seven Hills v. Aryan Nations* (1996), 76 Ohio St.3d 304, 667 N.E.2d 942.

As to R.C. 4117.11(B)(8) (the advance-notice provision), I agree with the majority that this section, as applied in this instance to peaceful information dissemination, is not justified as being in this state's interest in protecting the safety of the citizenry, or protecting and preserving public services. The facts show that the call for picketing here was of a peaceful informational nature. There was no call for work stoppage, or other such concerted action, to be taken by those who appeared for such picketing. Accordingly, as to these appellants, the statute is unconstitutionally applied.

However, I am not convinced that R.C. 4117.11(B)(8) is inherently unconstitutional as written. I conclude that it may well serve the public purpose in some limited instances, and not be an unbridled prior restraint of speech.

R.C. 4117.11(B)(8) does not permit SERB to deny a permit, or deny free speech. Instead, it merely requires that an employee organization, or public employees, give notice to their employer and to SERB, ten days prior to any "picketing, striking, *or other concerted refusal to work.*" (Emphasis added.)

Where there is a planned concerted refusal to work, involving picketing, striking, or other related activity, the ten-day requirement does not constitute an unreasonably long period of time. Such a notice may be essential in order for the state to maintain stable labor relations and ensure the delivery of essential services that are vital to the public welfare.

Concluding, I concur that R.C. 4117.11(B)(7) is unconstitutional. I dissent from the majority's holding that R.C. 4117.11(B)(8) is facially unconstitutional. However, I concur with the majority that such section has been unconstitutionally applied in this instance.