[Cite as *Mahoning Edn. Assn. of Dev. Disabilities v. State Emp. Relations Bd.*, 2012-Ohio-3000.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

MAHONING EDUCATION ASSOC.    )
OF DEVELOPMENTAL DISABILITIES,  )    CASE NO. 11 MA 52
    )
        APPELLANT,    )
    )
VS.    )    O P I N I O N
    )
STATE EMPLOYMENT RELATIONS    )
BOARD, et al.,    )
    )
        APPELLEES.    )

CHARACTER OF PROCEEDINGS:    Civil Appeal from Common Pleas Court, Case No. 10CV1785.

JUDGMENT:    Reversed.

<u>JUDGES</u>:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated:  June 28, 2012

[Cite as *Mahoning Edn. Assn. of Dev. Disabilities v. State Emp. Relations Bd.*, 2012-Ohio-3000.]

APPEARANCES:

For Appellant:
Attorney Ira Mirkin
Attorney Richard Bush
Attorney Stanley Okusewsky, III
Attorney Charles Oldfield
P.O. Box 849
Youngstown, Ohio  44501


For Appellees:
Attorney Michael DeWine
Ohio Attorney General
Attorney Lori Weisman
Assistant Attorney General
615 West Superior Avenue, 11th Floor
Cleveland, Ohio  44113-1899
(For State Employment Relations Bd.)


Attorney Michael DeWine
Ohio Attorney General
Attorney Michael Allen
Assistant Attorney General
30 East Broad Street, 26th Floor
Columbus, Ohio  43215-3400
(For State Employment Relations Bd.)


Attorney Eugene Nevada
6500 Emerald Parkway Suite 100
Dublin, Ohio  43016
(For Mahoning County Board of
Developmental Disabilities)

[Cite as *Mahoning Edn. Assn. of Dev. Disabilities v. State Emp. Relations Bd.*, 2012-Ohio-3000.]
VUKOVICH, J.

{¶1} Appellant Mahoning Education Association of Developmental Disabilities (the union) appeals the decision of the Mahoning County Common Pleas Court which upheld the constitutionality of the portion of R.C. 4117.11(B)(8) prohibiting picketing by a public employee or a public employee organization unless ten days' written notice is provided to the public employer. The union's threshold argument is that the law is an unconstitutional content-based restriction on speech that does not meet the strict scrutiny test. SERB counters that the statute is a content-neutral time, place, and manner regulation and thus subject to intermediate scrutiny.

{¶2} Because the law only applies to public employees and their employee organizations, the law delineates a "disfavored speaker" and is thus treated as a content-based restriction subject to strict scrutiny. In applying the strict scrutiny test, we conclude that the government has not met its burden of showing that the law, requiring ten days of notice before mere picketing, is necessary to serve a compelling state interest and is narrowly drawn to achieve that interest. Accordingly, we reverse the trial court's judgment and hold that the provision at issue in R.C. 4117.11(B)(8) is unconstitutional.

## STATEMENT OF THE CASE

{¶3} The union was in negotiations for a new contract with the Mahoning County Board of Developmental Disabilities (the employer). On November 5, 2007, the union picketed an evening board meeting. An unlawful labor practice charge was filed with the State Employment Relations Board (SERB), and SERB concluded that the union violated R.C. 4117.11(B)(8) which states:

{¶4} "It is an unfair labor practice for an employee organization, its agents, or representatives, or public employees to: * * * Engage in any picketing, striking, or other concerted refusal to work without giving written notice to the public employer and to the state employment relations board not less than ten days prior to the action. The notice shall state the date and time that the action will commence and, once the notice is given, the parties may extend it by the written agreement of both."

**{¶5}** Besides contesting the alleged violation, the union had also challenged the constitutionality of the statute, but SERB found that, as an administrative agency, it had no authority to find a statute unconstitutional. The union appealed to the trial court, where the parties briefed the statute's constitutionality. On March 2, 2011, the trial court found that R.C. 4117.11(B)(8) was not unconstitutional and affirmed SERB's unfair labor practice decision. The union filed a timely appeal, assigning the following as error: "THE TRIAL COURT ERRED WHEN IT FOUND R.C. 4117.11(B)(8) DOES NOT VIOLATE THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 11, ARTICLE 1, OHIO CONSTITUTION."

**{¶6}** Within this assignment of error, the union raises various issues: (1) whether the statutory provision is content-based requiring strict scrutiny or content-neutral requiring only intermediate scrutiny; (2) whether the law survives strict scrutiny; (3) whether the law survives intermediate scrutiny; (4) whether the law is a prior restraint and thus subject to strict scrutiny on this alternative ground[1]; and (5) whether strict scrutiny could alternatively apply because the location was a designated public forum at the time of the public meeting. Due to our resolution of the first two issues in favor of the union, the alternative arguments made by the union are moot.

CONTENT-BASED OR CONTENT-NEUTRAL

**{¶7}** When a statute that burdens speech is challenged on a First Amendment basis, an important line of inquiry is whether the regulation is content-based or content-neutral in order to determine the applicable level of scrutiny: strict or intermediate. If the statutory provision is content-based, then the strict scrutiny test is applied to determine the restriction's constitutionality. *Painesville Bldg. Dept. v. Dworken & Bernstein Co., L.P.A.*, 89 Ohio St.3d 564, 567, 773 N.E.2d 1152 (2000). This is because content-based regulations are presumptively invalid. *R.A.V. v. St.*

---

[1]The Eighth District concluded that R.C. 4117.11(B)(8)'s requirement of advance notice picketing speech and assembly constitutes a prior restraint that is subject to strict scrutiny. *United Electrical, Radio and Machine Workers of America v. SERB*, 126 Ohio App.3d 345, 710 N.E.2d 358 (8th Dist.1998), citing *Thomas v. Collins* (1945), 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed.2d 430 (1945) (requirement that union speaker register and receive organizer's card before giving speech was subject to strict scrutiny even where card was issued to all who applied), *Rosen v. Port of Portland*, 641 F.2d 124 (9th Cir.1981) (one-day notice for demonstrating or leafleting in airport was invalid prior restraint).

*Paul*, 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). In meeting the strict scrutiny test for a content-based law, the government is required to show that the regulation is necessary to serve a compelling state interest and is narrowly drawn to achieve that interest. *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000); *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).

{¶8} A content-neutral regulation, on the other hand, is subject only to an intermediate level of scrutiny. *Turner Broadcasting Sys. v. F.C.C.*, 512 U.S. 622, 642, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). A content-neutral regulation thus may impose reasonable restrictions on the time, place, or manner of speech as long as the restrictions are: justified without reference to the content of the regulated speech, narrowly tailored to serve a significant or substantial (as opposed to compelling) governmental interest, and leave open alternative channels for communication of the information. *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Upon outlining these levels of scrutiny, we turn to the distinction between content-based and content-neutral laws.

{¶9} A content-based regulation typically "stifles speech on account of its message." *Turner Broadcasting*, 512 U.S. at 641-642. A law is content-based if it applies to speech based on not just a particular viewpoint but also if it applies to burden an entire topic of expression regardless of viewpoint. *Burson v. Freeman*, 504 U.S. 191, 197, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992).

{¶10} In contrast, a regulation is said to be content-neutral if it is unrelated to the content of the speech and merely regulates the time, place, and manner of the speech. *Id.* at 642. The distinction, however, is not a clear one. "Determination of whether individual regulations are content-based or content-neutral has proved problematic in practice * * *." *Painesville*, 89 Ohio St.3d at 568.

{¶11} The union cites two Supreme Court cases here, which SERB urges are distinguishable. In one case, an ordinance prohibited picketing near a school unless it was peaceful labor picketing of a school involved in a labor dispute. *Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). An equal protection claim

was found to be closely intertwined with freedom of expression doctrines. *Id.* at 95. The Court held that the ordinance was content-based because it "describes impermissible picketing not in terms of time, place, and manner, but in terms of subject matter." *Id.* at 99. The Court then concluded that the discrimination against non-labor picketing was not narrowly tailored to achieve its end as peaceful non-labor picketing would not be more disruptive than peaceful labor picketing. *Id.*

**{¶12}** In the other case, a statute banned picketing of a residence unless used as a place of employment and specified that it does not prohibit picketing a place of employment involved in a labor dispute. *Carey v. Brown*, 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980). The Court applied the *Mosley* rationale and invalidated the statute. *Id.* at 463-469.

**{¶13}** The union contends that the statute at issue similarly singles out labor picketing by imposing a burden before labor speech can be used. As the union notes, the Eighth district has cited these cases in support of its decision to find that a different provision, R.C. 4117.11(B)(7), was content-based. *United Electrical, Radio and Machine Workers of America v. SERB*, 126 Ohio App.3d 345, 355-356, 710 N.E.2d 358 (8th Dist.1998). As the union points out, the *United* Court also characterized (B)(8) as a content-based law.

**{¶14}** Yet, the *United* court made this declaration without a full analysis. Rather, the court seemed to find (B)(8) content-based by relying on its analysis regarding why (B)(7) was content-based. However, a comparison of division (B)(7) with (B)(8) shows that the divisions have distinguishable language. Pursuant to R.C. 4117.11:

**{¶15}** "(B) It is an unfair labor practice for an employee organization, its agents, or representatives, or public employees to: * * *

**{¶16}** "(7) Induce or encourage any individual *in connection with a labor relations dispute* to picket the residence or any place or private employment of any public official or representative of the public employer.

**{¶17}** "(8) Engage in any picketing, striking, or other concerted refusal to work without giving written notice to the public employer and to the state employment relations board not less than ten days prior to the action. * * * ." (Emphasis added).

**{¶18}** Division (B)(7) specifically refers to picketing in connection with a labor relations dispute. However, division (B)(8) does not delineate the subject matter of the picketing. That is, an employee or her union may wish to picket on the topic of labor. Or, they may wish to picket about the political position of a candidate or office holder, or the personal immorality of a board member, or an office's treatment of a citizen. The statute provides that the employee or employee organization must give ten days' worth of notice no matter what topic they choose to embrace by their picketing. As such, we prefer a different line of reasoning than that mentioned by the Eighth District in *United*.

**{¶19}** We address a subset of content-based laws or a corollary of disfavored speech laws: disfavored speaker laws. The United States Supreme Court has treated disfavored speaker laws the same as disfavored speech laws and thus has applied strict scrutiny in cases where a type of speaker is singled out for burdened expression. *Sorrell v. IMS Health, Inc.*, __ U.S. __, 131 S.Ct. 2653, 2663-2664, 2667 (2011) (disfavored speaker law is essentially viewpoint discrimination); *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 658, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994) (strict scrutiny applies to regulations reflecting an aversion to what disfavored speakers have to say); *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 418, 429, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) (a law's burden on commercial handbills that does not burden an ordinary newspaper is a type of content-based law subject to strict scrutiny as it disfavors the speaker).

**{¶20}** "Premised on mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints. *Prohibited, too, are restrictions distinguishing among different speakers, allowing speech by some but not others.* As instruments to censor, these categories are interrelated: *Speech restrictions based on the identity of the speaker are all too often simply a means to*

*control content.*" (Citations omitted) (Emphasis added). *Citizen's United v. FEC*, __ U.S. ___, 130 S.Ct. 876, 898-899, 175 L.Ed.2d 753 (2010).

{¶21} R.C. 4117.11(B)(8) singles out a certain type of speaker: a public employee organization and the public employees themselves. That is, anyone can picket outside a board meeting without notice except public employees and their union, who are singled out and required to give ten days' written notice of the intent to picket. Thus, it is not merely a time, place, and manner restriction as proposed by SERB. Rather, it creates a disfavored speaker by discriminating against public employees and their unions and burdening their ability to engage in spontaneous speech in the form of a picket at a board meeting. Following this line of reasoning, we conclude that the law is content-based and thus strict scrutiny is the applicable standard.

<u>STRICT SCRUTINY</u>

{¶22} In applying strict scrutiny, the government is required to show that the regulation is necessary to serve a compelling state interest and is narrowly drawn to achieve that compelling interest. *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). If a less restrictive alternative would serve the state's purpose, the legislature must use that alternative. *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000)*.* "When plaintiffs challenge a content-based speech restriction, the burden is on the Government to prove that the proposed alternatives will not be as effective as the challenged statute." *Ashcroft v. ACLU*, 542 U.S. 656, 665, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004).

{¶23} As for a compelling state interest, SERB argues that the trial court properly found that the following state interests were advanced by the ten-day notice requirement: (1) ability to prepare a response to publicity; (2) ability to anticipate disruptions that often accompanying picketing and to arrange security precautions; (3) a cooling-off period minimizes the chance of violence, vandalism, heightened emotions, or intemperate behavior on the picket line; (4) a chance to avoid confrontation, such as by mediation; (5) time to reflect on the most productive course

of action and to consult with experts to reduce chances of ill-advised responses which may constitute an unfair labor practice or make the situation worse; and (6) SERB can try to defuse matters before picketing begins. The trial court also found that Chapter 4117 has a purpose to minimize the possibility of public sector labor disputes and encourage labor stability and peace by remedying the negative impact to the public caused by work stoppages. *See Kettering v. SERB*, 26 Ohio St.3d 50, 55, 496 N.E.2d 983 (1996) (also noting that prior to passage of the Act there had been over four hundred public employee work stoppages in Ohio between 1973 and 1980).

**{¶24}** As the trial court opined, these are legitimate concerns. However, a legitimate concern is not the equivalent of a compelling state interest. As the union emphasizes, there was no work stoppage.

**{¶25}** On this topic, we note that the statute prohibits without notice "any picketing, striking, or other concerted refusal to work." There is a potential question as to whether the only type of picketing prohibited is a type of concerted refusal to work. Picketing is not necessarily a refusal to work, and the picketing here occurred at an evening board meeting. Still, SERB found the union guilty of a unfair labor practice here for violating R.C. 4117.18(B)(8). Thus, SERB applies the law even if the picketing is not a concerted refusal to work. This minimizes the state's interest as compared to the interests regarding the striking and concerted refusal to work portions of the statute. In other words, the government interest in avoiding a work stoppage is not as compelling in the case of picketing a board meeting as it is in the case of a strike. Besides the lack of work stoppage and/or disruption to public services, there was no disruption in the provision of services to the government by others.

**{¶26}** Moreover, the desire to avoid oral dispute with one's employees in public is not a compelling state interest at the expense of free speech. In fact, "[a]n essential function of free speech is to invite dispute." *Seven Hills v. Aryan Nations*, 76 Ohio St.3d 304, 309, 667 N.E.2d 942 (1996). It has been stated that avoiding a "*potential* threat" to public order and safety from speech is not a compelling government interest absent clear and present danger. *Id.* at 308. Speech's value is elevated because it can induce a condition of unrest and create dissatisfaction with the status quo. *Id.* As

the Eighth District opined, the state does not have a compelling state interest in avoiding bad publicity by "dispers[ing] the drama of the moment and interrupt[ing] the natural momentum of events." *United*, 126 Ohio App.3d at 365.

**{¶27}** Here, we have an advance notice/registration requirement for speech applicable only to disfavored speakers, the public employees and their union, which is thus content-based and subject to strict scrutiny. A concern with many advance notice requirements is that the delay squelches spontaneity and the excitement of the moment acting to dilute the effectiveness of the speech. See *Talley v. California* (1960), 362 U.S. 60, 64-65 (ordinance invalid where it prohibited distribution of leaflets unless label identified name and address of distributor); *Shuttlesworth v. Birmingham*, 394 U.S. 147, 163, 89 S.Ct. 935, 945, 22 L.Ed.2d 162, 174 (1969) (Harlan, J. concurring) ("when an event occurs, it is often necessary to have one's voice heard promptly, if it is to be considered at all."). *See also Thomas v. Collins*, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945) (state's requirement that union speaker register and receive organizer's card before giving speech was invalid even where the card was issued to all who applied).

**{¶28}** Even assuming arguendo the state asserted some compelling interest, the state has failed to show that written notice ten days in advance of a picket is *necessary* to serve these interests or that this requirement is *narrowly tailored* to meet these interests. *See Perry Ed. Assn.*, 460 U.S. at 45. Ten days is a long time to force a public employee and her union to wait to voice an opinion through an informational picket of a board meeting, especially since board meetings are few and far between. And, it does not take ten days to arrange security or prepare a response to publicity.

**{¶29}** For all of these reasons, we hold that the requirement that a public employee organization and public employees must provide ten days of advance notice of a picket does not pass the strict scrutiny test. The state has not shown that the provision is necessary to serve a compelling government interest or that it is narrowly tailored to achieve that interest.

## CONCLUSION

**{¶30}** R.C. 4117.11(B)(8) is a disfavored speaker law and thus the equivalent of a content-based burden on the free speech rights of public employee organizations and public employees. As such, it is subject to strict scrutiny. In applying the strict scrutiny test, we conclude that the requirement that public employee organizations and public employees must provide ten days' advance notice of a picket is not necessary to serve a compelling government interest and is not narrowly tailored to achieve that interest. Consequently, the trial court's decision is reversed, and the portion of R.C. 4117.11(B)(8) requiring ten days' notice prior to picketing is held unconstitutional.

Donofrio, J., concurs.
Waite, P.J., concurs.