[Cite as *Harrison Hills Teachers Assn. v. State Emp. Relations Bd.*, 2016-Ohio-4661.]

STATE OF OHIO, HARRISON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| HARRISON HILLS TEACHERS | ) | CASE NO. 15 HA 0008 |
| ASSOCIATION, OEA/NEA, | ) | |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| STATE EMPLOYMENT RELATIONS | ) | |
| BOARD AND HARRISON HILLS CITY | ) | |
| SCHOOL DISTRICT BOARD OF | ) | |
| EDUCATION, | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common Pleas of Harrison County, Ohio Case No. CVH-2010-0052

JUDGMENT:      Affirmed.

JUDGES:

Hon. Carol Ann Robb
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: June 17, 2016

APPEARANCES:

For Plaintiff-Appellant:                        Atty. Charles W. Oldfield
Atty. Ira J. Mirkin
Atty. Stanley Okusewski, III
Green Haines Sgambati, Co., LPA
City Centre One, Suite 800
100 Federal Plaza East
Youngstown, Ohio 44503


For Defendants-Appellees:                  Atty. Lori J. Freedman
Assistant Attorney General
615 W. Superior Avenue
Cleveland, Ohio 44113

Atty. Thomas C. Holmes
Atty. Megan D. Mauer
Pepple & Waggoner, LTD.
5005 Rockside Rd., Suite 260
Cleveland, Ohio 44131

ROBB, J.

{¶1} Appellant Harrison Hills Teachers Association, OEA/NEA ("the union") appeals the decision of the Harrison County Common Pleas Court in an administrative appeal. The trial court upheld the decision of Appellee State Employment Relations Board ("SERB"), which found the union committed an unfair labor practice in violation of R.C. 4117.11(B)(7) by inducing or encouraging another, in connection with a labor dispute, to picket the private employer of a member of Appellee Harrison Hills City School District Board of Education ("the school board"). The union argues the statutory provision is an unconstitutional restriction on speech in violation of the First Amendment. Specifically, the union claims the trial court erred in finding R.C. 4117.11(B)(7) is not a content-based restriction on speech subject to strict scrutiny.

{¶2} The picketing restriction is not content-based merely because it entails picketing "in connection with a labor relations dispute." The law is contained within the Ohio's Public Employee Collective Bargaining Act and is a reasonable time, *place*, or manner restriction in the labor picketing genre. The provision is not subject to strict scrutiny. The trial court's judgment upholding SERB's unfair labor practice decision is affirmed.

<u>STATEMENT OF THE CASE</u>

{¶3} As their collective bargaining agreement ended in June 2007, the union and the school board conducted negotiations for a successor contract. On September 12, 2007, the union provided a notice of intent to strike (to occur on October 1). On September 26, 2007, union members picketed on a public street outside of a school board member's private employer, located in St. Clairsville, Ohio (outside of the school district). They carried a sign measuring eight feet. The school board member who worked at this private place of employment represented the school board on the negotiating team.

{¶4} The school board filed an unfair labor practice charge with SERB. The case was submitted to SERB on the briefs and a joint stipulation of facts. The union

wished to advance a constitutionality argument and essentially admitted its violation of R.C. 4117.11(B)(7), which provides:

> It is an unfair labor practice for an employee organization, its agents, or representatives, or public employees to:  * * *  Induce or encourage any individual in connection with a labor relations dispute to picket the residence or any place of private employment of any public official or representative of the public employer[.]

{¶5}   On March 31, 2010, SERB issued an order finding an unfair labor practice in violation R.C. 4117.11(B)(7).  SERB pointed out that it had no authority to declare its enabling statute unconstitutional.  *See State ex rel. Rootstown Local School Dist. Bd. of Edn. v. Portage Cty. Court of Common Pleas*, 78 Ohio St.3d 489, 494, 678 N.E.2d 1365 (1997), citing *State ex rel. Columbus S. Power Co. v. Sheward*, 63 Ohio St.3d 78, 81, 585 N.E.2d 380 (1992) ("It is settled that an administrative agency is without jurisdiction to determine the constitutional validity of a statute.").

{¶6}   The union appealed the administrative decision to the trial court.  The union filed a brief in the trial court, urging R.C. 4117.11(B)(7) is unconstitutional as it is a content-based law and does not meet the strict scrutiny test.  The school board and SERB each filed response briefs arguing the statutory provision is constitutional.[1]

{¶7}   On July 23, 2015, the trial court issued a decision upholding the administrative order.  The court ruled R.C. 4117.11(B)(7) is content-neutral rather than content-based, finding the speech restriction to be incidental to the law, not the reason for the law.  The court rejected the Eighth District's decision that (B)(7) is an unconstitutional content-based restriction on labor speech, in a case involving the residential picketing portion of (B)(7).  The trial court found the law narrowly tailored as it prohibited picketing at only two specific locations.  The court cited a United States Supreme Court case for the proposition that a prohibition on the picketing of a

---

[1] The case was fully briefed in the trial court in August 2010.  Supplemental authority was filed in 2012 and 2015.  After the union filed a request for a status conference in February 2015, the trial court removed the case from the docket of a retired visiting judge and scheduled oral argument.

business unrelated to the labor dispute is not unconstitutional as it leaves open other traditional modes of communication. *See Carpenters & Joiners Union of America, Local 213 v. Ritter's Café*, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143 (1942). The union filed a timely appeal.

<u>ASSIGNMENT OF ERROR</u>

**{¶8}** The union's sole assignment of error provides:

"The trial court erred when it found that R.C. 4117.11(B)(7)'s ban on peaceful labor picketing does not violate the right to freedom of speech."

**{¶9}** The union points out that a public street is a traditional public forum and picketing has been characterized as a classic example of First Amendment expression. The union asserts R.C. 4117.11(B)(7) should be presumed unconstitutional due to its restriction on speech. There is no contention that R.C. 4117.11(B)(7) is unconstitutional if a standard less than strict scrutiny were to apply. Rather, the union asserts the provision fails the strict scrutiny test. In positing strict scrutiny is applicable, the union urges (B)(7) is content-based as it regulates picketing only on the subject of a labor relations dispute. *See* R.C. 4117.11(B)(7) ("in connection with a labor relations dispute").

**{¶10}** According to the union, United States Supreme Court precedent has shifted dramatically since the 1942 *Ritter's Café* case relied upon by the trial court. The union asks us to apply the United States Supreme Court cases of *Mosley* and *Carey*, which struck laws that favored labor picketing. The union says (B)(7) does the opposite by favoring non-labor picketing. The Eighth District applied these cases to find (B)(7) an unconstitutional subject-matter based restriction on labor speech. *See United Electrical, Radio and Machine Workers of America v. SERB*, 126 Ohio App.3d 345, 710 N.E.2d 358 (8th Dist.1998) (where the fact-pattern involved only the residential picketing portion of the statute and did not involve private employer picketing). The Colorado Supreme Court invalidated a law which made it an unfair labor practice to picket the home of a fellow employee, finding it was a content-based

law which failed strict scrutiny. *CF&I Steel, L.P. v. United Steel Workers of America*, 23 P.3d 1197 (Colo.2001) (not a public employer case).[2]

**{¶11}** The union notes that in evaluating a different restriction under (B)(8) of the same statute, this court pointed out (B)(7) specifically applies to picketing "in connection with a labor relations dispute." *See Mahoning Edn. Assn. of Dev. Disabilities v. State Emp. Relations Bd.*, 7th Dist. No. 11MA52, 2012-Ohio-3000, 973 N.E.2d 322, ¶ 18; R.C. 4117.11(B)(8) (requiring public employees to give ten days' written notice before engaging "in any picketing, striking, or other concerted refusal to work"). As that case did not involve picketing of a private employer, the line of cases on the topic of secondary picketing was not raised or considered by this court. In any event, the union does not rely on the constitutional holding made by this court in that case, apparently recognizing the Ohio Supreme Court ruled this court should not have addressed the constitutional claim. *Mahoning Edn. Assn. of Dev. Disabilities v. State Emp. Relations Bd.*, 137 Ohio St.3d 257, 2013-Ohio-4654, 998 N.E.2d 1124 (affirming the decision to reverse SERB but only on unrelated, predicate grounds).[3] The union relies on the argument that the law is content-based because it only applies "in connection with a labor relations dispute."

**{¶12}** In applying strict scrutiny, the union asserts the state's interests proffered by SERB were not compelling; it is claimed that protecting residential privacy is merely significant, encouraging public service is merely desirable, and protecting labor peace is vague. The union also says SERB failed to show the law is narrowly tailored to serve these interests since order can be preserved via residential ordinances and/or the criminal code. The union notes (B)(7) has been unenforceable in Cuyahoga County since 1998 but no evidence shows the state's interests were negatively affected as a result of that appellate court's decision.

---

[2] In the underlying appeal, the Colorado appellate court expressly adopted the Eighth District's position in *United Electrical*. *CF&I Steel*, 990 P.2d 1124 (Colo.App.1999).

[3] The Supreme Court found the picketing prohibited by (B)(8) was only that related to a work stoppage due to the modifying language, "or other concerted refusal to work." As (B)(8) did not apply to informational picketing, the SERB decision was reversed with no need to reach any constitutional

**{¶13}** The school board relies on *Ritter's Café* for the proposition that the state has the power to confine labor picketing to the sphere of communication. It points to cases upholding secondary boycott bans designed to protect innocent neutrals from being entangled in a labor dispute. The school board emphasizes that nothing in *Mosley* and *Carey* suggests the Court was overruling long-standing case law permitting this type of restriction on labor picketing. It urges the prohibition on picketing a private employer in connection with a labor relations dispute with a public employer is a content-neutral time, place, or manner restriction.

**{¶14}** In addition to these arguments, SERB points out that this case deals with the government as an employer enforcing a law regarding the collective bargaining process rather than the government regulating the conduct of its citizens. *See Painter v. Graley*, 70 Ohio St.3d 377, 381, 639 N.E.2d 51 (1994) ("This court has consistently held that rational restrictions on a public employee's right to run for office may be imposed without violating rights arising from the Ohio Constitution."), citing *Waters v. Churchill*, 511 U.S. 661, 672, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) ("Even something as close to the core of the First Amendment as participation in political campaigns may be prohibited to government employees."). As (B)(7) is part of the Ohio Public Employee Collective Bargaining Act, SERB emphasizes it applies to labor relations disputes and public employees by its very nature. SERB urges (B)(7) serves a purpose unrelated to the content of the speech and is content-neutral, even if there are incidental effects on some speakers or messages.

**{¶15}** SERB distinguishes the recent United States Supreme Court decision in *Reed v. Gilbert*, where sign restrictions were entirely based on the communicative content of the sign. SERB contends (B)(7) does not seek to ban speech based on the message: the union is free to express its message, just not at two specific places unrelated to the dispute. After arguing strict scrutiny is inapplicable, the school board and SERB conclude by arguing (B)(7) is narrowly tailored to serve significant

issues. The type of picketing prohibited in (B)(7) is not modified by a "concerted refusal to work" and thus includes informational picketing. *See Mahoning Edn. Assn.*, 137 Ohio St.3d 257.

government interests under the intermediate scrutiny test. SERB also claims the law would pass the strict scrutiny test if the court found it content-based.

<u>LAW & ANALYSIS</u>

**{¶16}** As the parties concede, this case involves public streets and sidewalks: a public forum. *See Perry Educ. Assn. v. Perry Local Educators Assn.*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) (a street and parks are "quintessential public forums"). If a statute that burdens speech in a public forum is challenged on a First Amendment basis, there is generally an inquiry as to whether the regulation is content-based or content-neutral. *See id.*; *Seven Hills v. Aryan Nations*, 76 Ohio St.3d 304, 306, 667 N.E.2d 942 (1996). The answer to this question determines whether the law is subject to strict scrutiny (as in the case of content-based speech restrictions) or intermediate scrutiny (as in the case of content-neutral speech restrictions). *See id.*

**{¶17}** In meeting the strict scrutiny test for a content-based law, the government is required to show that the regulation is necessary to serve a compelling state interest and is narrowly tailored to achieve that interest by the least restrictive means. *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000); *Perry Ed. Assn.*, 460 U.S. at 45. *See also In re Judicial Campaign Complaint Against O'Toole*, 141 Ohio St.3d 355, 2014-Ohio-4046, 24 N.E.3d 1114, ¶ 19-20 (content-based speech restriction is presumed invalid; burden is on government to show restriction is constitutional).

**{¶18}** In meeting the intermediate scrutiny test for a content-neutral law, the statute must impose a reasonable restriction that is narrowly tailored to serve a significant (as opposed to compelling) governmental interest and must leave open alternative channels for communication of the information. *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 797-798, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (the law need not be the least restrictive means); *Perry Ed. Assn.*, 460 U.S. at 45.

**{¶19}** As to whether the restriction is content-based or content-neutral, the distinction is not always easy, "has proved problematic in practice," and is considered a "perplexing problem in First Amendment jurisprudence." *Painesville Bldg. Dept. v.*

*Dworken & Bernstein Co., L.P.A.*, 89 Ohio St.3d 564, 568, 733 N.E.2d 1152 (2000). A law is content-based if it regulates speech because of the message being conveyed. *Turner Broadcasting Sys. v. F.C.C.*, 512 U.S. 622, 642, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994) (regardless of whether the law favors or disfavors the message). "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." *Id.*, citing *Burson v. Freeman*, 504 U.S. 191, 197, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992) ("Whether individuals may exercise their free-speech rights near polling places depends entirely on whether their speech is related to a political campaign"). Even if it is not viewpoint-based, a law can still be content-based if it burdens speech on a topic of expression. *Burson*, 504 U.S. at 197.

> Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. This commonsense meaning of the phrase "content based" requires a court to consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys. Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.

*Reed v. Town of Gilbert, Ariz.*, __ U.S. __, 135 S.Ct. 2218, 2227, 192 L.Ed.2d 236 (2015) (citations omitted).

{¶20} In *Reed*, a town defined categories of temporary, political, and ideological signs on the basis of their message and placed different restrictions on each category. As the applicable restriction was entirely based on a sign's communicative content, the regulation of speech was said to be content-based. *Id.* "When the Government seeks to restrict speech based on its content, the usual presumption of constitutionality afforded congressional enactments is reversed."

*Playboy*, 529 U.S. at 817 (a content-based law is presumptively invalid, and the government has the burden to rebut that presumption).

**{¶21}** "By contrast, laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral." *Id.* A regulation is said to be content-neutral if it merely incidentally burdens speech by regulating the time, place, or manner of the speech. *Id.* A content-neutral regulation is one "justified without reference to the content of the regulated speech." *Ward*, 491 U.S. at 791. "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.*

**{¶22}** The union asks us to apply the United States Supreme Court cases of *Mosley* and *Carey*. In *Mosley*, an ordinance prohibited picketing near a school unless it was peaceful labor picketing of a school involved in a labor dispute. *Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). An equal protection claim was found to be closely intertwined with freedom of expression doctrines. *Id.* at 95. The Court held the ordinance was content-based because it "describes impermissible picketing not in terms of time, place, and manner, but in terms of subject matter." *Id.* at 99. The Court concluded the discrimination against non-labor picketing was not narrowly tailored to achieve a compelling interest (as peaceful non-labor picketing would not be more disruptive than peaceful labor picketing). *Id.*

**{¶23}** In *Carey*, a statute banned the picketing of a residence unless the residence was used as a place of employment. *Carey v. Brown*, 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980). The Court applied *Mosley* and invalidated the statute. *Id.* at 463-469. The Court found the law content-based as it discriminated between lawful and unlawful conduct based upon the content of the demonstrator's communication; it exempted only the "peaceful picketing of a place of employment involved in a labor dispute." *Id.* at 460 (finding the statute made an impermissible distinction between labor and non-labor picketing and conditioned permissibility

solely on the message being conveyed). The Court noted labor picketing was not entitled to more First Amendment protections than other protests. *Id.* at 466.

**{¶24}** The Eighth District relied on *Mosley* and *Carey* to support its decision to declare R.C. 4117.11(B)(7) unconstitutional. *United Electrical, Radio and Machine Workers of America v. SERB*, 126 Ohio App.3d 345, 355-356, 710 N.E.2d 358 (8th Dist.1998). In that case, the union picketed the residence of the executive director of the Ohio Turnpike Commission during a labor dispute. The Eighth District found (B)(7) content-based and subject to strict scrutiny because it applied to picketing "in connection with a labor dispute * * *." *Id.* at 350-352 (regulation of residential labor picketing rather than all residential picketing was found to be content-based). The court concluded SERB failed to meet its burden to show the law survived strict scrutiny as the interests asserted (protecting residential privacy, encouraging public service, and maintaining labor peace) were not compelling and the law was not narrowly tailored to meet those interests. *Id.* at 352-353.

**{¶25}** It should be noted the *United Electrical* case involved only the residential picketing portion of (B)(7) and did not involve the picketing of a private employer, as is the case here. It should also be noted the Eighth District declined to apply the United States Supreme Court's holding in *Ritter's Café* on the grounds it was "decided prior to modern Supreme Court jurisprudence which applies the content-based/content-neutral analysis." *Id.* at fn. 2.

**{¶26}** In *Ritter's Café*, the union picketed a restaurant because the owner was building a structure at a different location and the contractor hired employed non-union carpenters and painters. The United States Supreme Court characterized the situation as one where a state "deemed it desirable to insulate from the dispute an establishment which industrially has no connection with the dispute." *Carpenters & Joiners Union of America, Local 213 v. Ritter's Cafe*, 315 U.S. 722, 727, 62 S.Ct. 807, 86 L.Ed. 1143 (1942).

> It is true that by peaceful picketing workingmen communicate their grievances. As a means of communicating the facts of a labor dispute peaceful picketing may be a phase of the constitutional right of free

utterance. But recognition of peaceful picketing as an exercise of free speech does not imply that the states must be without power to confine the sphere of communication to that directly related to the dispute. Restriction of picketing to the area of the industry within which a labor dispute arises leaves open to the disputants other traditional modes of communication. To deny to the states the power to draw this line is to write into the Constitution the notion that every instance of peaceful picketing-anywhere and under any circumstances-is necessarily a phase of the controversy which provoked the picketing. Such a view of the Due Process Clause would compel the states to allow the disputants in a particular industrial episode to conscript neutrals having no relation to either the dispute or the industry in which it arose.

*Id.* at 727-728. Forbidding the conscription of neutrals in similar disputes "represents the prevailing, and probably the unanimous, policy of the states." *Id.* at 728.

**{¶27}** After *Ritter's Café* found it was within the state's power to govern the permissible types of contests between industrial combatants, the Ohio Supreme Court ruled a secondary boycott involving picketing or bannering was unlawful conduct under the common law and emphasized the constitutional right of free speech depended on the lawful exercise of the right. *W.E. Anderson Sons Co. v. Local Union No. 311, Internatl. Broth. of Teamsters, Chauffeurs, Stablemen & Helpers of America*, 156 Ohio St. 541, 561-562, 104 N.E.2d 22 (1952) (reviewing United States Supreme Court cases up to that point), citing, e.g., *International Broth. of Elec. Workers, Local 501, A.F. of L. v. N.L.R.B.*, 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299 (1951). In this cited case, the United States Supreme Court compared the previously-granted states' right to regulate secondary picketing to the federal government's power under the National Labor Relations Act (N.L.R.A.) to prohibit the incitement of secondary picketing:

The prohibition of inducement or encouragement of secondary pressure by [§] 8(b)(4)(A) carries no unconstitutional abridgment of free speech. * * * The substantive evil condemned by Congress in [§] 8(b)(4) is the

secondary boycott and we recently have recognized the constitutional right of states to proscribe picketing in furtherance of comparably unlawful objectives."

*International Broth. of Elec. Workers*, 341 U.S. at 705.

**{¶28}** Forty years after *Ritter's Café*, the United States Supreme Court continued to uphold secondary picketing restrictions in labor disputes. In the *Retail Store* case, the Court agreed the union's picketing violated the statutory ban on the coercion of neutral parties with the object of forcing them to cease dealing in the primary product or to cease doing business with the primary employer. *See N.L.R.B. v. Retail Store Emp. Union, Local 1001*, 447 U.S. 607, 608, 100 S.Ct. 2372, 65 L.Ed.2d 377 (1980). A plurality of the Court said it was well-established that Congress does not restrict constitutionally-protected speech by prohibiting secondary picketing done to persuade the customers of a secondary employer to boycott him so that he will pressure the primary employer in some manner. *Id.* at 616. Such picketing spreads labor discord by coercing a neutral party to join the fray, and a prohibition on picketing done to further unlawful objectives does not violate the First Amendment. *Id.*

**{¶29}** Two other justices concurred separately to set forth a different First Amendment analysis, but both found the law constitutional. *See id.* at 616-618 (Blackmun, J., concurring in part and in result) (finding Congress struck a "delicate balance between union freedom of expression and the ability of neutral employers, employees, and consumers to remain free from coerced participation in industrial strife"); *id.* at 618-620 (Stevens, J., concurring in part and in result). In his concurring opinion, Justice Stevens expressed:

> I have little difficulty in concluding that the restriction at issue in this case is constitutional. Like so many other kinds of expression, picketing is a mixture of conduct and communication. In the labor context, it is the conduct element rather than the particular idea being expressed that often provides the most persuasive deterrent to third persons about to enter a business establishment.

The concurring opinion of Justice Blackmun expressed:

> The plurality's cursory discussion of what for me are difficult First Amendment issues presented by this case fails to take account of the effect of this Court's decision in *Police Department of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972), on the question whether the National Labor Relations Act's content-based ban on peaceful picketing of secondary employers is constitutional. The failure to take *Mosley* into account is particularly ironic given that the Court today reaffirms and extends the principles of that case in *Carey v. Brown*, 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263.

This discussion and the fact *Retail Store* was released on the same day as *Carey* contradicts the union's argument that *Ritter's Café* is outdated law and the content-based test superseded earlier labor cases.

**{¶30}** After *Retail Store*, the entire Court stated: "We have consistently rejected the claim that secondary picketing by labor unions in violation of § 8(b)(4) is protected activity under the First Amendment. It would seem even clearer that conduct designed not to communicate but to coerce merits still less consideration under the First Amendment. The labor laws reflect a careful balancing of interests." *International Longshoremen's Assn., AFL-CIO v. Allied Internatl., Inc.*, 456 U.S. 212, 226, 102 S.Ct. 1656, 72 L.Ed.2d 21 (1982) (citations omitted).

**{¶31}** At the same time, the Court distinguished a political protest case from its labor cases resulting from economic regulation by reiterating: "Secondary boycotts and picketing by labor unions may be prohibited, as part of 'Congress' striking of the delicate balance between union freedom of expression and the ability of neutral employers, employees, and consumers to remain free from coerced participation in industrial strife.'" *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 912, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982), quoting *Retail Store*, 447 U.S. at 617-618 (Blackmun, J., concurring in part). It is important to note that handbilling and leafletting are not prohibited by picketing restrictions as these manifestations of speech are distinct from picketing, which involves a patrolling behavior. *See, e.g.,*

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 582-583, 588, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988) ("That construction makes unnecessary passing on the serious constitutional questions that would be raised by the Board's understanding of the statute.").

**{¶32}** The N.L.R.A. does not apply to public employees. Various states have enacted collective bargaining laws to govern labor relation disputes between themselves (as employers) and the public employees. The law at issue here is a part of such an act. The Public Employees Collective Bargaining Act is the state of Ohio's exercise of its police power to promote the general safety and welfare. *City of Kettering v. State Emp. Relations Bd.*, 26 Ohio St.3d 50, 55, 496 N.E.2d 983 (1986), citing *State ex rel. Dayton Fraternal Order of Police Lodge No. 44, v. SERB*, 22 Ohio St.3d 1, 5, 488 N.E.2d 181 (1986) (the act was intended to create a comprehensive scheme to facilitate the orderly resolution of or to minimize labor relation disputes involving public employees by creating clarity and stability in an area that previously had none).[4]

**{¶33}** SERB also mentions the Hatch Act, which bars federal employees from taking an active part in political management or campaigns. The First Amendment is not violated by the act's prohibition on partisan political conduct by federal employees. *Civil Serv. Comm. v. National Assn. of Letter Carriers, AFL-CIO*, 413 U.S. 548, 556, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). The point made by SERB is the government as an employer and participant in collective bargaining is not the equivalent of the government as sovereign over its general citizenry.

**{¶34}** The picketing of the private employer of a public official (or representative of a public employer) in connection with a labor dispute is more akin to

---

[4] As background for the act, there were 428 public employee work stoppages in Ohio between 1973 and 1980, prior to the act's passage. *State ex rel. Dayton Fraternal Order of Police*, 22 Ohio St.3d at 5. Ohio ranked near or at the top of the states for the highest number of strikes by safety forces in the 1970's, and there were fifteen strikes by safety forces, involving 2,300 workers, in 1980. "Clearly, the situation had reached crisis proportions." *City of Rocky River v. State Emp. Relations Bd.*, 43 Ohio St.3d 1, 539 N.E.2d 103 (1989), fn. 16. "During those turbulent days, public employees, including safety forces, were also prohibited from striking, but frustrations stemming from employee powerlessness frequently erupted into illegal strikes. The General Assembly has put an end to such

the secondary picketing labor cases than the *Mosley* and *Carey* cases, which involved restrictions on picketing by the public on general concerns, including political concerns. This picketing of the private employer seeks to draw a neutral into the collective bargaining strife against his will and influence or coerce that neutral into pressuring its employee in order to avoid the negative effects of a picket line.

**{¶35}** Labor picketing encompasses more than mere speech as it entails conduct, conduct likely to cause a reaction. *See, e.g., Building. Serv. Employees Internatl. Union, Local 262 v. Gazzam*, 339 U.S. 532, 537, 70 S.Ct. 784, 94 L.Ed. 1045 (1950). The reaction is considered contrary to state policy when the place of the picket is a neutral business that happens to employ a public official or representative of a public employer. Secondary picketing of neutrals was enjoined under the common law. *W.E. Anderson Sons*, 156 Ohio St. at 561-562 (the constitutional right of free speech depends on the lawful exercise of the right but a secondary boycott is considered unlawful conduct under the common law). A similar policy is now codified in R.C. 4117.11(B)(7) as to public employees and their unions who induce or encourage the picketing of a neutral private employer in connection with a labor relations dispute.

**{¶36}** Based upon the foregoing collection of authorities, this court concludes the pertinent prohibition in (B)(7) is "justified without regard to the content" of the regulated conduct and is a reasonable time, place, or manner restriction, most specifically a place restriction. *See Ward*, 491 U.S. at 791 ("A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."). The private employer forum for the public employee labor dispute picketing was restricted due to the regulation of conduct akin to secondary picketing; the speech is considered incident to the unlawful conduct. We note the restriction is on picketing, not handbilling or leafletting. As in the Supreme Court's labor cases, the state is merely ensuring the sphere of the labor dispute is not expanded to the point that private

chaos, particularly where safety forces are concerned, by enacting R.C. Chapter 4117, the Public Employees' Collective Bargaining Act." *Id.* at 20.

employers become embroiled in collective bargaining which does not concern their business. The ban on picketing of a private employer in (B)(7) is a content-neutral regulation in the realm of economic regulation and collective bargaining of public employees that has an incidental burden on speech in the immediate geographical location of a private employer but is not message-based.

{¶37} Accordingly, strict scrutiny does not apply. Where strict scrutiny is not required, then the state is not required to show the law is the least restrictive means available to meet the state's interests, nor must the interests be compelling. *See id.* The ban on picketing a private employer targets only the issue it seeks to remedy (the effects of secondary labor picketing) and leaves open ample alternative channels for communication. As aforementioned, the union does not contend the law would fail under a test less than strict scrutiny; nor did the union raise any such argument below. We need proceed no further.

{¶38} For the foregoing reasons, the trial court's decision is upheld.


Waite, J., concurs.

DeGenaro, J., concurs.