[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Portage Cty. Educators Assn. for Dev. Disabilities-Unit B, OEA/NEA v. State Emp. Relations Bd.*, **Slip Opinion No. 2022-Ohio-3167.**]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-3167

PORTAGE COUNTY EDUCATORS ASSOCIATION FOR DEVELOPMENTAL DISABILITIES-UNIT B, OEA/NEA, APPELLEE, *v*. STATE EMPLOYMENT RELATIONS BOARD ET AL., APPELLANTS.

[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Portage Cty. Educators Assn. for Dev. Disabilities-Unit B, OEA/NEA v. State Emp. Relations Bd.*, **Slip Opinion No. 2022-Ohio-3167.**]

*First Amendment—Freedom of speech—Picketing in connection with a labor-relations dispute—R.C. 4117.11(B)(7)'s prohibition against inducing or encouraging any individual in connection with a labor-relations dispute to picket the residence or place of private employment of any public official or representative of the public employer violates the First Amendment to the United States Constitution as a content-based restriction of expressive activity—Court of appeals' judgment affirmed.*

(Nos. 2021-0190 and 2021-0191—Submitted February 9, 2022—Decided September 13, 2022.)

APPEAL from and CERTIFIED by the Court of Appeals for Portage County,

No. 2019-P-0055, 2020-Ohio-7004.

_____

**DONNELLY, J.**

{¶ 1} Peaceful picketing on a public sidewalk or street enjoys a venerated status as a form of expressive activity that is subject to the protections of the First Amendment to the United States Constitution. R.C. 4117.11(B)(7) makes it "an unfair labor practice for an employee organization, its agents, or representatives, or public employees to * * * [i]nduce or encourage any individual in connection with a labor relations dispute to picket the residence or any place of private employment of any public official or representative of the public employer." The issue in this case is whether R.C. 4117.11(B)(7) violates the First Amendment. Because we conclude that the statute does violate the First Amendment, we hereby affirm the judgment of the Eleventh District Court of Appeals and answer the certified-conflict issue in the negative.

**FACTS**

{¶ 2} Appellant Portage County Board of Developmental Disabilities ("the board") is a "public employer" under R.C. 4117.01(B). Appellee, Portage County Educators Association for Developmental Disabilities–Unit B, OEA/NEA ("the association"), is an "employee organization" under R.C. 4117.01(D) that represents the board's service and support administrators.

{¶ 3} On September 15, 2017, when negotiations over a successor collective-bargaining agreement reached an impasse, the association filed a notice of intent to strike, and association members began picketing on or about October 4, 2017. On seven dates in October 2017, association members engaged in labor picketing outside the residences of six board members. On one occasion, association members picketed outside the private business and place of employment of one of the board members. On each occasion, the picketing took

place entirely on public streets or sidewalks. There is no evidence that any labor picketing involved obstructive or disruptive behavior.

{¶ 4} The board filed seven unfair-labor-practice charges against the association, alleging in each charge that the picketing violated R.C. 4117.11(B)(7). On May 3, 2018, appellant State Employment Relations Board ("SERB") issued an opinion finding that the association had violated R.C. 4117.11(B)(7) and ordering the association to cease and desist from inducing or encouraging any person in connection with a labor-relations dispute to picket the residence or private place of employment of any public official or representative of the board.[1]

{¶ 5} The association appealed SERB's decision to the Portage County Court of Common Pleas, alleging that R.C. 4117.11(B)(7) was an unconstitutional content-based restriction on speech in violation of the First Amendment. Rejecting the association's constitutional challenge, the common pleas court upheld SERB's findings, ruling that R.C. 4117.11(B)(7) was a valid, content-neutral time, place, and manner limitation on speech. The Eleventh District reversed the common pleas court's judgment after determining that R.C. 4117.11(B)(7) is an unconstitutional content-based restriction on speech. *See* 2020-Ohio-7004, 166 N.E.3d 63. The board and SERB each filed a discretionary appeal from that judgment (Supreme Court case No. 2021-0190). Finding its judgment invalidating R.C. 4117.11(B)(7) as to private-employment picketing to be in conflict with the judgment of the Seventh District Court of Appeals in *Harrison Hills Teachers Assn. v. State Emp. Relations Bd.*, 2016-Ohio-4661, 56 N.E.3d 986 (7th Dist.), the Eleventh District certified a conflict to this court (Supreme Court case No. 2021-0191).

---

1. As an administrative agency, SERB does not have jurisdiction to determine the constitutionality of R.C. 4117.11(B)(7). *See State ex rel. Columbus S. Power Co. v. Sheward*, 63 Ohio St.3d 78, 81, 585 N.E.2d 380 (1992).

**{¶ 6}** We accepted the discretionary appeals and determined that a conflict exists. 162 Ohio St.3d 1443, 2021-Ohio-1398, 166 N.E.3d 1271. We also consolidated the causes for consideration. *Id.*

## LAW AND ANALYSIS

### *Standard of Review*

**{¶ 7}** Whether a statute is constitutional is a question of law that we review de novo. *See Crutchfield Corp. v. Testa*, 151 Ohio St.3d 278, 2016-Ohio-7760, 88 N.E.3d 900, ¶ 16. And determining, in particular, whether R.C. 4117.11(B)(7) is constitutional requires that we review the basic foundation of First Amendment law.

### *The First Amendment*

**{¶ 8}** The First Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides in part that "Congress shall make no law * * * abridging the freedom of speech." *See also Reed v. Gilbert, Arizona*, 576 U.S. 155, 163, 135 S.Ct. 2218, 192 L.Ed.2d 236 (2015). The guiding principle of the First Amendment is that " 'government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.' " *McCullen v. Coakley,* 573 U.S. 464, 477, 134 S.Ct. 2518, 189 L.Ed.2d 502 (2014), quoting *Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972).

**{¶ 9}** "[A]s a general matter peaceful picketing and leafletting are expressive activities involving 'speech' protected by the First Amendment." *United States v. Grace,* 461 U.S. 171, 176, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983). *See also Carey v. Brown*, 447 U.S. 455, 460, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980) (Illinois statute prohibiting peaceful labor picketing on the public streets and sidewalks in residential neighborhoods held to be an unconstitutional regulation of expressive conduct that fell within the First Amendment preserve).

{¶ 10} Expressive activity that occurs on public sidewalks, streets, and other traditional public forums occupies a " 'special position in terms of First Amendment protection' " because of the historic role of such forums as sites for assembly, discussions, and debate. *McCullen* at 476, quoting *Grace* at 180. *See also Perry Edn. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).

{¶ 11} While the government's ability to restrict speech in such locations is " 'very limited,' " *McCullen*, 573 U.S. at 477, 134 S.Ct. 2518, 189 L.Ed.2d 502, quoting *Grace* at 177, the government has "somewhat wider leeway to regulate features of speech unrelated to its content," *id.*, e.g., with regulations that are content neutral. "[E]ven in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.' " *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed. 2d 661 (1989), quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed. 2d 221 (1984).

{¶ 12} On the other hand, a regulation that targets speech based on its content is subject to the most exacting scrutiny. *See Reed*, 576 U.S. at 163, 135 S.Ct. 2218, 192 L.Ed.2d 236; *Boos v. Barry*, 485 U.S. 312, 321, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). If a statute regulates speech based on its content, it must be narrowly tailored to serve a compelling government interest and it must be the least-restrictive means readily available to serve that interest. *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000); *Sable Communications of California, Inc. v. Fed. Communications Comm.*, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989). "To do otherwise would

be to restrict speech without an adequate justification, a course the First Amendment does not permit." *Playboy Entertainment Group* at 813.

{¶ 13} Whether a regulation is content based or content neutral thus dictates the degree of scrutiny to which the regulation will be subjected. *See Reed* at 163-166; *Painesville Bldg. Dept. v. Dworken & Bernstein Co., L.P.A.*, 89 Ohio St.3d 564, 567, 733 N.E.2d 1152 (2000); *Seven Hills v. Aryan Nations*, 76 Ohio St.3d 304, 306-307, 667 N.E.2d 942 (1996).

{¶ 14} In this case, the threshold issue is whether R.C. 4117.11(B)(7) is content based or content neutral. SERB and the board insist that R.C. 4117.11(B)(7) is a content-neutral regulation that only incidentally burdens speech by regulating the time, place, and manner of the speech. Conversely, the association maintains that R.C. 4117.11(B)(7) is a content-based regulation of expressive activity. We begin our analysis by addressing that threshold issue.

*Whether R.C. 4117.11(B)(7) is Content Based or Content Neutral*

{¶ 15} According to SERB and the board, R.C. 4117.11(B)(7) is content neutral because it does not prohibit speech or prevent anyone from communicating any particular message. They further contend that the statute does not create a speech-free buffer zone around public officials' residences or places of private employment, because all forms of communication other than targeted picketing are permissible. In their view, R.C. 4117.11(B)(7) is a permissible time, place, and manner restriction that is operative during a narrow period of *time* (picketing in connection with a labor-relations dispute), at a particular *place* (public officials' residences and places of private employment), for a particular *manner* of expression ("targeted picketing").

{¶ 16} But "a constitutionally permissible time, place, or manner restriction may not be based upon either the content or subject matter of speech." *Consolidated Edison Co. of New York, Inc. v. Pub. Serv. Comm. of New York*, 447 U.S. 530, 536, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980). *See also Regan v. Time,*

*Inc.*, 468 U.S. 641, 648, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984); *Heffron v. Internatl. Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 648, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981). The United States Supreme Court has recognized that " '[a] state or municipality may protect individual privacy by enacting reasonable time, place, and manner regulations applicable to all speech *irrespective of content*.' " (Brackets and emphasis added in *Carey*). *Carey*, 447 U.S. at 470, 100 S.Ct. 2286, 65 L.Ed.2d 263, quoting *Erznoznik v. Jacksonville*, 422 U.S. 205, 209, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975). "Governmental action that regulates speech on the basis of its subject matter, however, " ' "slip[s] from the neutrality of time, place, and circumstance into a concern about content." ' " *Consolidated Edison* at 536, quoting *Mosley*, 408 U.S. at 99, 92 S.Ct. 2286, 33 L.Ed.2d 212, quoting Kalven, *The Concept of the Public Forum: Cox v. Louisiana*, 1965 Sup.Ct.Rev. 1, 29 (1965).

{¶ 17} In *Reed*, 576 U.S. at 165, 135 S.Ct. 2218, 192 L.Ed.2d 236, the court instructed that the first step in the content-neutrality analysis is to determine whether the law is content neutral on its face. *See also id.* at 166 ("we have repeatedly considered whether a law is content neutral on its face *before* turning to the law's justification or purpose" [emphasis sic]). And in this case, an examination of R.C. 4117.11(B)(7) reveals that on its face the law is not content neutral, but rather, it regulates expressive activity based on the content of the message and the identity of the messenger.

{¶ 18} As to the message, R.C. 4117.11(B)(7) regulates expressive activity—picketing—that is induced or encouraged by certain parties "in connection with a labor relations dispute." That language indisputably identifies the subject matter of the expression. Indeed, United States Supreme Court decisions confirm that a speech regulation that distinguishes labor picketing (or the inducement or encouragement thereof) from other picketing is a regulation of expression based on its subject matter. *See, e.g.*, *Carey* at 460-462; *Mosley* at 95

(ordinance that exempted peaceful labor picketing from a general prohibition against picketing next to a school deemed an unconstitutional restriction on expression "in terms of its subject matter"); *Grayned v. Rockford*, 408 U.S. 104, 107, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (same). Regardless of whether a statute accords preferential treatment or disfavored treatment to expressive activity related to labor picketing, singling out labor picketing for specialized treatment is a content-based regulation of the expressive activity.

{¶ 19} Even if R.C. 4117.11(B)(7) did not, on its face, draw content-based distinctions, it would still be content based "if it required 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a violation has occurred." *McCullen*, 573 U.S. at 479, 134 S.Ct. 2518, 189 L.Ed.2d 502, quoting *Fed. Communications Comm. v. League of Women Voters of California*, 468 U.S. 364, 383, 104 S.Ct. 3106, 82 L.Ed.2d 278 (1984). In this case, SERB—an enforcement authority—must necessarily examine whether the picketing specifically emanated from one particular side of a labor-relations dispute, rather than simply determining that a general instance of picketing occurred, in order to determine whether an unfair labor practice occurred. To do that, SERB must examine the content of the picketing. The substance of the picketers' message was inescapably the basis for SERB's unfair-labor-practice findings against the association.

{¶ 20} R.C. 4117.11(B)(7) additionally regulates expressive activity based on the identity of the messenger. More specifically, it forbids "an employee organization, its agents, or representatives, or public employees" from inducing or encouraging anyone to picket a public official's residence or place of private employment in connection with a labor-relations dispute. *Id.* In *Rosenberger v. Rector and Visitors of the Univ. of Virginia*, 515 U.S. 819, 829, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995), the United States Supreme Court stated:

When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant. *See R.A.V. v. St. Paul*, 505 U.S. 377, 391, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). Viewpoint discrimination is thus an egregious form of content discrimination.

In this case, R.C. 4117.11(B)(7) suppresses expressive activity that is induced or encouraged by the association and its agents or representatives or by public employees. Only an employee or an employee association and its affiliates—and not any other parties involved in a labor-relations dispute—can be found to have committed an unfair labor practice under R.C. 4117.11(B)(7) for expressing the viewpoint that they advocate. The regulation unmistakably restricts the particular views of particular speakers.

{¶ 21} An examination of R.C. 4117.11(B)(7) on its face thus fails to substantiate the contentions of SERB and the board that the statute can be "justified without reference to the content of the regulated speech," *Ward*, 491 U.S. at 791, 109 S.Ct. 2746, 105 L.Ed.2d 661. To the contrary, its regulation of expressive activity involving picketing is predicated on the content of the speech. And because constitutionally permissible time, place, and manner regulations cannot be based on the content (or subject matter) of speech, the attempt by SERB and the board to defend R.C. 4117.11(B)(7) as a reasonable time, place, and manner regulation is unavailing.

{¶ 22} For their part, SERB and the board rely on *Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988), in which the United States Supreme Court upheld an ordinance that banned all picketing "before or about" any residence. *Id.* at 476-477. Because the ordinance did not make any exception to this prohibition based on the subject matter of the picketing, the ordinance was deemed to be content neutral. In this case, by contrast, R.C. 4117.11(B)(7)

prohibits only the inducement or encouragement of certain residential and private-employer picketing that promotes certain viewpoints related to a particular kind of dispute. Because the statute at issue here regulates expressive activity related to picketing on the basis of content, *Frisby* is fundamentally distinguishable from this case.

**{¶ 23}** We therefore agree with the Eleventh District that R.C. 4117.11(B)(7) is a content-based regulation of speech. Having so concluded, we must now review the statute's specific restrictions regarding residential picketing and private-employer picketing to ascertain whether the statute survives strict scrutiny.

*Application of Strict Scrutiny to R.C. 4117.11(B)(7)*

**{¶ 24}** As indicated previously, a statute that regulates speech based on its content must be narrowly tailored to serve a compelling government interest and it must be the least-restrictive means readily available to serve that interest. *See Playboy Entertainment Group*, 529 U.S. at 813, 120 S.Ct. 1878, 146 L.Ed.2d 865. In this case, SERB and the board argue that R.C. 4117.11(B)(7)'s prohibition aimed at residential picketing survives strict scrutiny because it serves the compelling state interest of protecting the privacy rights of public officials, thereby encouraging citizens to run for or serve in public office and preserving labor peace in Ohio.

**{¶ 25}** Laudable as those goals may be, we have already determined that preserving residential peace and privacy is a significant but not a compelling government interest. *See Seven Hills*, 76 Ohio St.3d at 309, 667 N.E.2d 942.

**{¶ 26}** In *United Elec., Radio & Machine Workers of Am. v. State Emp. Relations Bd.*, 126 Ohio App.3d 345, 353, 710 N.E.2d 358 (8th Dist.1998), the Eighth District Court of Appeals applied strict scrutiny to R.C. 4117.11(B)(7) and held that the state's interest in protecting the tranquility and privacy of a residential neighborhood was not a compelling government interest. The appeals court similarly concluded that encouraging citizens to serve as officials of public

employers was not a compelling government interest. The court further rejected the interest in preserving labor peace as "too vague" to represent a compelling government interest. *Id*. We agree with those determinations.

{¶ 27} Moreover, R.C. 4117.11(B)(7) is not narrowly tailored to the point that no less-restrictive means was available to serve the stated interests. Local ordinances and state criminal codes exist to preserve law and order in the event of disruptive conduct that disturbs residential privacy and are justified without reference to the content of the expression. Nor has there been any showing that banning residential and private-employer labor picketing is the only way to encourage citizens to serve as officials of public employers or to preserve the peace during labor disputes in Ohio. The medicine thus prescribed by R.C. 4117.11(B)(7) is not narrowly tailored to the proclaimed illness and indeed far exceeds the interests that it purports to serve.

{¶ 28} With regard to R.C. 4117.11(B)(7)'s prohibition of employee-organization picketing directed at any place of private employment of any public official or representative of the public employer in connection with a labor-relations dispute, SERB argued below that the statute permissibly prohibits "secondary picketing," i.e., labor picketing at a neutral party that is not directly involved in the labor dispute. The Eleventh District rejected SERB's argument and, finding its judgment on secondary picketing to be in conflict with that of the Seventh District's decision in *Harrison Hills Teachers Assn.*, 2016-Ohio-4661, 58 N.E.3d 986, certified the conflict in Supreme Court case No. 2021-0191. After determining that a conflict exists, we directed the parties to address

> [w]hether R.C. 4117.11(B)(7), as applied to 'any place of private employment of any public official or representative of the public employer,' is constitutionally valid under the First Amendment as a reasonable time, place, or manner restriction on speech.

162 Ohio St.3d 1443, 2021-Ohio-1398, 166 N.E.3d 1271.

{¶ 29} SERB and the board contend that the prohibition on private-employer picketing regulates the geographical location of speech in a content-neutral manner. As we have already discussed, however, R.C. 4117.11(B)(7) is not a content-neutral regulation of the time, place, and manner of speech, but rather is a content-based regulation of expressive activity that would have to be narrowly tailored to serve a compelling government interest in order to survive strict scrutiny.

{¶ 30} SERB also contends that R.C. 4117.11(B)(7) lawfully prohibits secondary picketing. In *Harrison Hills*, the Seventh District deemed the private-employer-picketing prohibition in R.C. 4117.11(B)(7) to be "more akin" to the secondary picketing proscribed by Section 8(b)(4)(ii)(B) of the National Labor Relations Act, 29 U.S.C. Section 158(b)(4)(ii)(B), than to the picketing addressed by the United States Supreme Court in *Mosley* and *Carey*. *Harrison Hills* at ¶ 34. Under Section 8(b)(4)(ii)(B), it is an unfair labor practice for a labor organization or its agents to threaten, coerce, or restrain a neutral party engaged in commerce or an industry affecting commerce if an objective is to force or require the neutral party to cease doing business with the primary party to the labor dispute. In *Natl. Labor Relations Bd. v. Retail Store Emps. Union, Local 1001*, 447 U.S. 607, 100 S.Ct. 2372, 65 L.Ed.2d 377 (1980), the United States Supreme Court held that Section 8(b)(4)(ii)(B) does not prohibit all secondary picketing, provided that the picketing causes only incidental injury to the neutral party, but that it does forbid secondary picketing that can reasonably be expected to threaten a neutral party with ruin or substantial loss. Secondary picketing that violates Section 8(b)(4)(ii)(B) is not protected activity under the First Amendment. *See Internatl. Longshoremen's Assn., AFL-CIO v. Allied Internatl., Inc.*, 456 U.S. 212, 102 S.Ct. 1656, 72 L.Ed.2d 21 (1982). Here, we find SERB's argument analogizing the association members'

private-employer picketing to secondary picketing unpersuasive for several reasons.

{¶ 31} First, and contrary to the analogy drawn by the Seventh District in *Harrison Hills*, picketing at the private employer of a board member or other public official simply does not fit within the secondary-picketing paradigm. Here, the private employer is not a neutral party that has been drawn into the labor-relations dispute only because it does business with the primary employer. Indeed, in this case there is no indication that the private employer that was picketed by the association members had any business relations whatsoever with the board outside of the fact that one of the board members is both the owner and employee of the private employer. There is no indication that the private employer was threatened, coerced, or restrained from engaging in business with the board. Nor is there any evidence that that was the association's objective in picketing the private employer. Assuming further that the private employer engaged in commerce or an industry affecting commerce, any expressive activity that caused incidental injury to the private employer's business would not be prohibited by Section 8(b)(4)(ii)(B) and thus would remain protected by the First Amendment. The analogy to secondary picketing is thus inapposite.

{¶ 32} Second, SERB fails to establish how a statute prohibiting the association's peaceful and noncoercive labor-dispute picketing on a public sidewalk outside of a board member's private place of employment was narrowly tailored to serve any compelling government interest. While the interest in preserving privacy and tranquility at home and at work is important, we see no qualitative distinction between those interests that would cause us to treat either as a *compelling* government interest. Beyond that, SERB has not demonstrated how the categorical prohibition against such expressive activity under R.C. 4117.11(B)(7) is narrowly tailored to serve that interest in the least-restrictive way available. R.C. 4117.11(B)(7) thus cannot survive the strict scrutiny applicable to

content-based regulations of expressive activity that is protected by the First Amendment.

{¶ 33} We do not question the sanctity of the home as a place of personal refuge or the importance of an employee's workplace. Nor are we unsympathetic to the burdens that these board members and other public officials must occasionally endure in the performance of their official duties. But their status as public officials does not insulate them from the robust marketplace of ideas. The First Amendment, which makes that marketplace possible, is to be celebrated, not silenced.

{¶ 34} R.C. 4117.11(B)(7) silences that right for certain speakers on certain subjects. While SERB and the board benignly characterize R.C. 4117.11(B)(7) as a prohibition on "targeted picketing," we cannot help but see this law as a form of expressive-activity suppression that is irreconcilable with the protections guaranteed by the First Amendment.

## CONCLUSION

{¶ 35} We hold that R.C. 4117.11(B)(7) is unconstitutional in violation of the First Amendment. We further answer the certified-conflict issue in the negative. The judgment of the Eleventh District Court of Appeals is affirmed.

Judgment affirmed.

O'CONNOR, C.J., and STEWART and BRUNNER, JJ., concur.

KENNEDY, J., concurs in judgment only, with an opinion joined by FISCHER and DEWINE, JJ.

_____

**KENNEDY, J., concurring in judgment only.**

{¶ 36} Because R.C. 4117.11(B)(7)'s prohibition on inducing or encouraging any person to picket the home or place of private employment of a public official in connection with a labor-relations dispute—i.e., "targeted picketing"—is not narrowly tailored to serve a compelling state interest, I agree

with the majority that the statute violates the First Amendment to the United States Constitution.

{¶ 37} The Eleventh District Court of Appeals analyzed R.C. 4117.11(B)(7) as a content-based regulation of speech that differentiates between the messages that appear on picketers' signs. However, a violation of the statute requires acts of inducement or encouragement, and it does not depend on anyone engaging in targeted picketing. Nonetheless, limitations on inducing or encouraging others to picket in a public forum on an issue of public concern strike at the heart of free-speech protections. And R.C. 4117.11(B)(7) on its face is a content-based regulation of speech because it prohibits an employee organization, its agents or representatives, and public employees from inducing or encouraging others to picket a public official's home or place of private employment while allowing them to encourage targeted picketing that is unrelated to a labor-relations dispute and to *discourage* targeted picketing in all circumstances. The statute therefore singles out some speech for protection while prohibiting other speech based on the content of the message.

{¶ 38} Consequently, I concur in the majority's judgment to affirm the decision of the court of appeals, but not its reasoning.

**Facts and Procedural History**

{¶ 39} Appellee, Portage County Educators Association for Developmental Disabilities ("the association"), is a labor organization representing public employees who work for appellant Portage County Board of Developmental Disabilities ("the board"). After negotiations over a new collective-bargaining agreement reached an impasse, the association gave appellant State Employment Relations Board ("SERB") notice of its decision to picket and strike. On seven occasions in October 2017, association members picketed in front of a different board member's home. On another occasion, association members picketed at the place of private employment of one of the board members. The board charged the

association with unfair labor practices, and the association stipulated that it had encouraged and induced the targeted picketing of public officials. SERB found that the association had violated R.C. 4117.11(B)(7), and it ordered the association to *cease and desist inducing and encouraging* any person to picket at board members' homes and places of private employment. In an administrative appeal, the common pleas court upheld SERB's order, but the Eleventh District reversed, concluding that R.C. 4117.11(B)(7) violated the First Amendment as a content-based regulation of speech that did not survive strict scrutiny.

**Law and Analysis**

{¶ 40} Under the United States Constitution, the "government * * * 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.' " *Reed v. Gilbert, Arizona*, 576 U.S. 155, 163, 135 S.Ct. 2218, 192 L.Ed.2d 236 (2015), quoting *Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.*

{¶ 41} In addition to laws that on their face regulate speech based on its content, the United States Supreme Court has recognized "a separate and additional category of laws that, though facially content neutral, will be considered content-based regulations of speech: laws that cannot be ' "justified without reference to the content of the regulated speech,' " or that were adopted by the government 'because of disagreement with the message [the speech] conveys.' " (Brackets added in *Reed*.) *Id.* at 164, quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989), quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984).

{¶ 42} At issue here is R.C. 4117.11(B)(7), which provides that "it is an unfair labor practice for an employee organization, its agents, or representatives, or

16

public employees to * * * [i]nduce or encourage any individual in connection with a labor relations dispute to picket the residence or any place of private employment of any public official or representative of the public employer[.]"

{¶ 43} The majority's analysis focuses primarily on *picketing*. However, R.C. 4117.11(B)(7) does not directly regulate "labor picketing," targeted picketing, or any other type of picketing. Instead, the statute prohibits *inducing or encouraging* others to picket a place—a residence or place of private employment. So, although the majority claims with confidence that "[t]he substance of the picketers' message was inescapably the basis for SERB's unfair-labor-practice findings against the association," majority opinion at ¶ 19, it does not support that claim with any record evidence showing that SERB considered—much less penalized—the content of any picketer's speech.

{¶ 44} In fact, this case was decided on stipulations, none of which describe the messages that were on any picketer's sign or the words that any picketer said. In those stipulations, the association simply admitted that it had induced and encouraged its members to picket outside the public officials' homes and places of private employment. And the reason that the messages on the picketers' signs do not appear anywhere in the record is that they are irrelevant to establishing a violation of R.C. 4117.11(B)(7). A violation occurs if the association induced or encouraged targeted picketing at a residence or place of private employment, even if the picketing never took place.

{¶ 45} The majority's analysis, then, is unpersuasive. The question remains, however, whether R.C. 4117.11(B)(7) infringes on free-speech rights enshrined in the First Amendment.

{¶ 46} "Public-issue picketing, 'an exercise of * * * basic constitutional rights in their most pristine and classic form,' has always rested on the highest rung of the hierarchy of First Amendment values." (Ellipsis sic.) *Carey v. Brown*, 447 U.S. 455, 466-467, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980), quoting *Edwards v.*

*South Carolina*, 372 U.S. 229, 235, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963). Although R.C. 4117.11(B)(7) does not ban picketing itself, imposing limitations on inducing or encouraging others to engage in constitutionally protected speech—e.g., picketing directed at public officials addressing a matter of public concern in a public forum—strikes at the heart of the First Amendment, just as a direct ban on picketing would. *See Snyder v. Phelps*, 562 U.S. 443, 450-452, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011); *Garrison v. Louisiana*, 379 U.S. 64, 74-75, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964) ("For speech concerning public affairs is more than self-expression; it is the essence of self-government"). Picketing is a form of expression, and prohibiting speech that encourages or induces picketing necessarily chills the right to picket itself. As the Fourth Circuit Court of Appeals has noted, "mere encouragement is quintessential protected advocacy." *United States v. Miselis*, 972 F.3d 518, 536 (4th Cir.2020).

**{¶ 47}** R.C. 4117.11(B)(7) makes it an unfair labor practice for a public employee or his or her representative to *induce* or *encourage* others to picket a public official's home or place of private employment in connection with a labor dispute. The word "induce" means "to move and lead (as by persuasion or influence)" and to "bring about by influence or stimulation," *Webster's Third New International Dictionary* 1154 (1993), and "inducement" means "[t]he act or process of enticing or persuading another person to take a certain course of action." *Black's Law Dictionary* 926 (11th Ed.2019). The term "encourage" means to "inspire with courage, spirit, or hope," "to attempt to persuade," "to spur on," and "to give help or patronage to." *Webster's* at 747; *see also Black's* at 667 ("encourage" means "[t]o instigate; to incite to action; to embolden; to help").

**{¶ 48}** Inducement and encouragement are speech and expressive conduct. *See United States v. Hernandez-Calvillo*, ___ F.4th ___, ___, 2022 U.S. App. LEXIS 19284, *10 (10th Cir.2022). And R.C. 4117.11(B)(7) is a content-based law on its face because it singles out some speech for special treatment based on its

message. Under that statute, speech that induces or encourages others to engage in targeted picketing in connection with a labor dispute is prohibited; however, speech that is aimed at inducing and encouraging others to engage in targeted picketing is allowed if it does not touch on a labor dispute. That is, under R.C. 4117.11(B)(7), an employee organization, its agents or representatives, and public employees can encourage others to picket a public official's home or place of private employment in connection with a school-board dispute, a disagreement on tax policy, or for any other reason that does not impact a labor-relations dispute. Speech that discourages others from engaging in targeted picketing is permitted in all circumstances. With this statute, then, the government is picking and choosing which messages may be expressed and which messages may not be. That, it cannot do.

{¶ 49} "Content-based laws * * * are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed,* 576 U.S. at 163, 135 S.Ct. 2218, 192 L.Ed.2d 236. SERB maintains that the state has a compelling interest in protecting the privacy rights of public officials, encouraging citizens to serve in public offices, and preserving labor peace. But as the majority recognizes, we have rejected the proposition that these types of government interests are sufficiently compelling to survive strict scrutiny. *See Seven Hills v. Aryan Nations*, 76 Ohio St.3d 304, 309, 667 N.E.2d 942 (1996); *see also Carey*, 447 U.S. at 470, 100 S.Ct. 2286, 65 L.Ed.2d 263; *Thornhill v. Alabama*, 310 U.S. 88, 105, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). And R.C. 4117.11(B)(7) is not narrowly tailored to serve these interests, because the statute prohibits inducing or encouraging targeted picketing in only a few circumstances. Inducing or encouraging targeted picketing is not prohibited at all when there is no connection to a labor dispute. Claims that the statute is aimed at preserving the sanctity of the home, encouraging citizens to serve in public offices, and preserving the peace therefore ring hollow.

**Conclusion**

{¶ 50} For these reasons, R.C. 4117.11(B)(7)'s prohibition on inducing or encouraging targeted picketing in connection with a labor-relations dispute is a content-based restriction of speech that is not narrowly tailored to serve a compelling state interest. Because I agree that the statute violates the First Amendment to the United States Constitution, I concur in the majority's decision to affirm the judgment of the Eleventh District Court of Appeals, but not its reasoning.

FISCHER and DEWINE, JJ., concur in the foregoing opinion.

_____

Ronald J. Habowski, for appellant Portage County Board of Developmental Disabilities.

Organ Law, L.L.P., Erik J. Clark, and Connor A. Organ, Special Counsel to Attorney General Dave Yost, for appellant State Employment Relations Board.

Green, Haines, Sgambati Co., L.P.A., Charles W. Oldfield, Richard T. Bush, Stanley J. Okusewsky, and Ira J. Mirkin, for appellee.

Haynes, Kessler, Myers, and Postalakis, Inc., Stephen P. Postalakis, and David S. Kessler, urging reversal for amicus curiae, Ohio Association of County Boards Serving People with Developmental Disabilities.

_____